[852 NE2d 1163, 819 NYS2d 691]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LARRY FEINGOLD, Appellant.

Argued June 7, 2006; decided July 5, 2006

**POINTS OF COUNSEL**

*Rochman Platzer Fallick Sternheim Luca & Pearl, LLP,* New York City (*Jillian S. Harrington, Barry M. Fallick* and *Irwin Rochman* of counsel), for appellant. The phrase "under circumstances evincing a depraved indifference to human life" as used in both the depraved indifference murder section and the reckless endangerment in the first-degree section of the Penal Law should be given the same meaning. (*People v Suarez,* 6 NY3d 202; *People v Bolden,* 81 NY2d 146; *People v Register,* 60 NY2d 270; *People v Sanchez,* 98 NY2d 373.)

*Robert M. Morgenthau, District Attorney,* New York City (*Patricia Curran* and *Michael S. Morgan* of counsel), for respondent. Defendant's guilt was proved beyond a reasonable doubt. (*People v Suarez,* 6 NY3d 202; *People v Register,* 60 NY2d 270; *People v Gray,* 86 NY2d 10; *People v Santos,* 86 NY2d 869; *People v Finger,* 95 NY2d 894; *People v Hines,* 97 NY2d 56; *People v Acosta,* 80 NY2d 665; *People v Tejeda,* 73 NY2d 958; *People v Contes,* 60 NY2d 620; *People v Kennedy,* 47 NY2d 196.)

**OPINION OF THE COURT**

G.B. SMITH, J.

Defendant was convicted, after a nonjury trial, of reckless endangerment in the first degree in violation of Penal Law § 120.25. Because the verdict, as enunciated by the trial judge and affirmed by the Appellate Division, does not conform to this Court's precedents, we modify by reducing the conviction to reckless endangerment in the second degree.

## Facts

In February 2003 the 52-year-old defendant, an attorney working as an administrative law judge, attempted suicide in his 12th floor Manhattan apartment. Sealing the apartment door with tape, he blew out the pilot lights of his stove, turned on the gas, took tranquilizers and fell asleep in front of the oven, expecting the gas to kill him. Several hours later, a spark, apparently from the refrigerator compressor, ignited the gas, causing an explosion that wrecked the walls of his apartment and heavily damaged a number of neighboring apartments.

No one else was seriously injured and defendant himself survived. He was charged with first-degree reckless endangerment pursuant to Penal Law § 120.25, which provides that a person violates the statute "when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person."[1]

Supreme Court found, in a nonjury trial, that defendant's state of mind was not one of depraved indifference but nevertheless, relying on *People v Register* (60 NY2d 270 [1983]), found him guilty and sentenced him to five years' probation. The Appellate Division affirmed, and a Judge of this Court granted defendant leave to appeal.

## Discussion

■ The People first contend that defendant's argument that depraved indifference is a mens rea is unpreserved because he did not plainly present it to the trial court. The trial judge's decision, however, demonstrates that he specifically confronted and resolved this issue. Under these circumstances, we conclude that the preservation was adequate (*People v Prado*, 4 NY3d 725 [2004]).

To begin with, there is no dispute that the term "depraved indifference" has the same meaning in both the depraved indifference murder statute and the reckless endangerment statute. Defendant wishes this Court to say that the trial court should have viewed defendant's conduct with a subjective eye where the defendant must "evince a wicked and mischievous disregard

---

1. Identical language is contained in the depraved indifference murder statute, Penal Law § 125.25 (2), which reads: "A person is guilty of murder in the second degree when . . . 2. Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

(i.e., utter indifference) for the near certain consequences of his . . . irresponsible act." Defendant argues that under this test, depraved indifference was not established—and indeed ruled out by the factfinder—and therefore his conviction should be reversed.

The People rely on *Register*, asserting that depraved indifference refers not to the mens rea or the actus reus of the crime but to the "factual setting in which the risk creating conduct must occur." In *People v Register*, after a night of drinking, defendant shot a man fatally for no explained reason. Defendant was acquitted of intentional murder but convicted of depraved indifference murder. In a 4-3 decision, a majority of this Court concluded that the Legislature did not intend that a mens rea element beyond mere recklessness be included in the definition of depraved indifference murder. "The concept of depraved indifference was retained in the new statute [adopted in 1965] not to function as a *mens rea* element, but to objectively define the circumstances which must exist to elevate a homicide from manslaughter to murder" (*People v Register*, 60 NY2d at 278). The three dissenters, however, contended that the predecessor statutes to Penal Law § 125.25 (2) defined depraved indifference as a mens rea and that depraved mind and depraved indifference "connote a culpable mental state" (60 NY2d at 282).

In *People v Sanchez* (98 NY2d 373 [2002]), the jury found the defendant not guilty of intentional murder but guilty of depraved indifference murder. The deceased and the defendant had previously been friends, and the shooting occurred after an argument erupted on the day of the shooting. Relying on *People v Register*, the majority of a divided court concluded that although the gun had been fired at point-blank range, it was fired at an angle, the shooting was instantaneous and impulsive, and the jury could have concluded that "defendant's homicidal level of mental culpability was reckless rather than intentional" (98 NY2d at 378). In dissent, Judge G.B. Smith stated, "To uphold the conviction of depraved indifference murder in this case is to authorize the substitution of depraved indifference murder for intentional murder at any time that a person shoots and kills another" (98 NY2d at 393). Also in dissent, Judge Rosenblatt stated that "by holding the facts at hand sufficient to establish depraved indifference murder, *the majority leaves no conceivable circumstances under which a charge of intentional murder will not be amenable to a conviction for depraved indifference murder*" (98 NY2d at 394). Judge Rosenblatt added:

> "*Register* dealt chiefly with the defense of intoxication, but ironically, the case has served as the fulcrum for what has become a steadily growing prosecutorial practice of charging defendants with depraved indifference murder as a companion count to intentional murder. The *Register* majority brushed aside the dissenters' prediction that the decision would 'result in wholesale depraved mind murder prosecutions for what are essentially intentional murders' . . . . That prediction proved prescient, however, as revealed by the enormous growth in depraved indifference murder companion counts post-*Register*" (98 NY2d at 398).

After *Register* and *Sanchez*, and beginning in 2003, a number of decisions by this Court have pointed the law in a different direction. In *People v Hafeez* (100 NY2d 253 [2003]), after a jury found defendant not guilty of intentional murder but guilty of depraved indifference murder, the Appellate Division held that the evidence was insufficient for depraved indifference murder and this Court agreed. The evidence was that months after an unsuccessful confrontation with the deceased, the defendant and codefendant lay in wait for the deceased, and the codefendant stabbed him to death with a knife. Defendant was convicted of depraved indifference murder under an accomplice liability theory. We stated that:

> "[t]o meet their burden for depraved indifference murder, the People must show that defendant's acts were 'imminently dangerous and presented a very high risk of death to others' . . . . Here the actions of both defendants were focused on first isolating, and then intentionally injuring, the victim. From this record there exists no valid line of reasoning that could support a jury's conclusion that defendant possessed the mental culpability required for depraved indifference murder" (100 NY2d at 259).

In a concurrence, Judge Rosenblatt said that "the Court is limiting *Sanchez* by properly rejecting the incongruous notion that an intentional killing can reflect depraved indifference," and indicated that "the critical element in depraved indifference murder is not recklessness, but depraved indifference" (100 NY2d at 260).

In *People v Gonzalez* (1 NY3d 464 [2004]), after a jury found the defendant not guilty of intentional murder but guilty of

depraved indifference murder, this Court determined that a defendant could not be convicted of depraved indifference murder where a defendant first shot the deceased in the chest from a distance of six to seven feet, then shot him in the head as he fell to the floor and shot him eight more times as he lay on the floor. We concluded that the evidence indicated only an intentional murder. We stated:

> "Depraved indifference murder differs from intentional murder in that it results not from a specific, conscious intent to cause death, but from an indifference to or disregard of the risks attending defendant's conduct . . .

> "Depraved indifference murder does not mean an extremely, even heinously, intentional killing. Rather, it involves a killing in which the defendant does not have a conscious objective to cause death but instead is recklessly indifferent, depravedly so, to whether death occurs" (1 NY3d at 467-468).

In *People v Payne* (3 NY3d 266 [2004]), after a jury had acquitted the defendant of intentional murder but convicted him of depraved indifference murder, this Court held that defendant could not be found guilty of depraved indifference murder. There, a 20-year friendship between the defendant and the deceased was strained after the deceased was arrested and accused of sexually abusing an eight-year-old playmate of defendant's daughter. The defendant went to the home of the deceased and shot him in the chest with a 12-gauge "elephant" shotgun. We stated, "As the drafters of the Penal Law put it, depraved indifference murder is 'extremely dangerous and fatal conduct performed without specific homicidal intent but with a depraved kind of wantonness: for example, shooting into a crowd, placing a time bomb in a public place, or opening the door of the lions' cage in the zoo' " (3 NY3d at 272). In *Payne*, we stressed that such "[i]ndifference to the victim's life . . . contrasts with the intent to take it" (3 NY3d at 270; *see also Gonzalez*, 1 NY3d at 467; *Hafeez*, 100 NY2d at 258-259).

Finally, in *People v Suarez* (6 NY3d 202 [2005]), the jury acquitted defendant of intentional murder but found him guilty of depraved indifference murder. The defendant had stabbed his girlfriend in the throat, the chest and the abdomen and left her to bleed to death. In *People v McPherson*, decided with *Suarez*, defendant was charged only with depraved indifference murder

and first-degree manslaughter. She was convicted of depraved indifference murder. There, the defendant had stabbed the deceased with a knife and left him to die. This Court concluded that rarely can depraved indifference murder apply to the killing of a single victim. In a concurrence, three Judges of this Court indicated that they would "explicitly" overrule *People v Register* and *People v Sanchez* (*id.* at 217 [G.B. Smith, Rosenblatt and R.S. Smith, JJ., concurring]). Another Judge concurred on constraint of our decisions in *Hafeez* and *Payne* (*id.* at 219 [Read, J., concurring]). While the *Suarez* court did not explicitly overrule *Register* and *Sanchez*, we conclude that the law has changed to such an extent that *People v Register* and *People v Sanchez* should no longer be followed.

██ We say today explicitly what the Court in *Suarez* stopped short of saying: depraved indifference to human life is a culpable mental state. Our dissenting colleagues contend that this final step in the overruling of *Register* is unwarranted and unnecessary.[2] Perhaps we would agree with that were it not for the setting in which the present case comes to us. In earlier cases (*Hafeez, Gonzalez, Payne, Suarez*), we reversed depraved indifference murder convictions without having to discuss explicitly the question of mens rea. It was enough to say—and we said it repeatedly—that those defendants did not commit depraved indifference murder because depravity or indifference was lacking.

Beginning with *Hafeez*, the *Register/Sanchez* rationale was progressively weakened so that it would no longer support most depraved indifference murder convictions, particularly one-on-one shootings or stabbings. Indeed, Judge Read, in her concurrences in *Suarez* and *McPherson*, said that the results were compelled by *Hafeez* and *Payne*.

In *Suarez*, it was not necessary for us to state explicitly whether depraved indifference is a mental state (mens rea). In the case before us, however, the trial judge rendered his verdict in a way that requires us to address directly the question of mens rea.

---

2. Contrary to what Judge Ciparick's dissent may suggest, we do not overrule "case law dealing with the crime of first-degree reckless endangerment" (at 298). We overrule, by implication, only those depraved indifference reckless endangerment cases that rest on the premise that depraved indifference is measured not by a culpable mental state but by an objective assessment of the risk involved. Further, we reject Judge Ciparick's assertion that we have overruled *Suarez*. We have, however defined depraved indifference as a culpable mental state—a point not definitively addressed in *Suarez*.

Here, defendant might well be said to have acted with the mens rea of depraved indifference had the factfinder simply announced a guilty verdict. Viewing the evidence in the light most favorable to the People, we could properly have affirmed the conviction, concluding that the factfinder inferred that defendant had the requisite mental state (depraved indifference). But the verdict does not allow that to happen here. Here, the trial judge said he would have acquitted defendant of first-degree reckless endangerment but felt himself prohibited by *Register* from doing so. The Appellate Division ignored the trial judge's findings and affirmed, citing *Register*. Given the trial judge's findings, we cannot affirm the conviction because we cannot conceive that a person may be guilty of a depraved indifference crime without being depravedly indifferent. When a jury (or here, the court at a bench trial) pointedly says that defendant was not depravedly indifferent, it is not our place to say that he was.

In *Suarez*, we could readily hold that under any view of the evidence Suarez's acts did not amount to depraved indifference. The case before us is different. The factfinder here went out of his way to explain that

> "[t]his defendant was a plainly depressed individual, who committed an extremely reckless and foolish act not because of his lack of regard for the lives of others but because of his focus upon his troubles and himself. While being reckless, the defendant's state of mind was not one of extreme wickedness, or abject moral deficiency, or a mischievous disregard for the near certain consequences of his irresponsible act."

Thus, the factfinder actually pronounced defendant *innocent* of the core criminal element, depraved indifference. The dissenters protest this, but their objection is more properly directed against the verdict than against the law. That a large number of people were endangered does not mean that defendant was depravedly indifferent, particularly when the factfinder went to great pains to say the opposite.

We regard this as a juridical imperative, much the same as in any analogous situation. A person accused of stealing may be guilty of larceny, but a guilty verdict may not stand if the jury finds in a special verdict that the defendant did not intend to take anything. So, too, a person may not be said to have acted with the mens rea of depraved indifference when the jury (or

court as factfinder) tells us that he was not depravedly indifferent.

In short, we do not say that someone who endangers others by turning on the gas jets may never be found guilty of a depraved indifference crime. Here, however, because the factfinder told us that defendant was *not* depravedly indifferent, he cannot be properly convicted of first-degree reckless endangerment.

While our dissenting colleagues rely primarily on *Suarez*, we are unable to read *Suarez* as they do. We disagree with the Chief Judge's suggestion that the per curiam opinion in *Suarez* "decided the question" (at 302) by declining the suggestion of the concurrence to overrule *Register* and *Sanchez*. The three authors of the concurrence also signed the per curiam opinion and did not think that they were deciding the question contrary to their own views. The difference between the per curiam and the concurrence in *Suarez* was over whether to recognize "explicitly" that *Register* and *Sanchez* had been de facto overruled in prior cases. To the extent that the per curiam opinion may have left that question in doubt, the doubt is now removed.

We agree with the statement in Judge Ciparick's dissent that *Suarez* correctly states the law in saying that "depraved indifference is best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (at 298). We also accept Judge Ciparick's statement, paraphrasing *Suarez*, that "a depraved and utterly indifferent actor is someone who does not care if another is injured or killed" (*id.*). To us, however, the words "utter disregard," "willingness," and "does not care" can only describe a state of mind. We thus confirm what is implicit in the line of cases from *Hafeez* to *Suarez*. This Court has adopted the view of the *Register* and *Sanchez* dissents that "depraved indifference to human life" is a culpable mental state.

Our holding today will not, as the Chief Judge fears, prevent depraved indifference murder convictions in cases where they are warranted. The mens rea of depraved indifference to human life can, like any other mens rea, be proved by circumstantial evidence. We agree that the Chief Judge's hypothetical—"a person boarded an empty train car and, in order to commit suicide, derailed the train, thereby killing passengers in other cars"—states a "quintessential" case of depraved indifference

murder, because in that case the circumstantial proof of depraved indifference would be compelling (at 303). The Chief Judge suggests it is almost equally compelling here—and, indeed, perhaps a reasonable factfinder could infer depraved indifference from these facts. But the factfinder in this case did not.

Accordingly, the order of the Appellate Division should be modified by reducing defendant's conviction to reckless endangerment in the second degree and remitting to Supreme Court for resentencing and, as so modified, affirmed.[3]

CIPARICK, J. (dissenting). Because I believe that our very recent holding in *People v Suarez* (6 NY3d 202 [2005]) compels a different result, I respectfully dissent.

Viewing the evidence in the light most favorable to the People, as we must, a rational trier of fact could reasonably find, beyond a reasonable doubt, the essential elements of the crime of reckless endangerment in the first degree in this case.[1] Reckless endangerment in the first degree "seeks to prevent and criminalize the risk alone created by an actor's conduct" as opposed to proscribing "a particular resulting outcome or injury" (*People v Chrysler*, 85 NY2d 413, 415 [1995]; *see also People v Davis*, 72 NY2d 32, 36 [1988]). In a prosecution for first-degree reckless endangerment two elements must be proven: first that defendant recklessly engaged in conduct that created a grave risk of death to another person,[2] and second that the defendant did so under circumstances evincing a depraved indifference to human life.

Both parties agree that our precedents construing the phrase "circumstances evincing a depraved indifference to human life"

---

**3.** Penal Law § 120.20 reads, "A person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person."

**1.** "A person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person" (Penal Law § 120.25).

**2.** Penal Law § 15.05 (3) defines "recklessly" as follows:

"A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."

as applied to depraved indifference murder are applicable to the crime of reckless endangerment in the first degree. Even giving the same meaning to the phrase "under circumstances evincing a depraved indifference to human life" as used in both the depraved indifference murder statute and the reckless endangerment in the first-degree statute, defendant's conviction should be upheld, as nothing in our precedents requires the imposition of a separate culpable mental state—mens rea—to the element of depraved indifference to human life.

In *Suarez*, we made "clear that depraved indifference is best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (6 NY3d at 214). Stated differently, a depraved and utterly indifferent actor is someone who does not care if another is injured or killed by his or her extremely dangerous acts, and the failure to give even a thought to such potential harm in the first place can, in and of itself, establish the depraved indifference element of the statute. By requiring a separate mens rea for this second element the majority today has overruled *People v Register* (60 NY2d 270 [1983]), *People v Sanchez* (98 NY2d 373 [2002]) and to a certain extent *People v Suarez* (6 NY3d 202 [2005]), as well as case law dealing with the crime of first-degree reckless endangerment (*see e.g. People v Lynch*, 95 NY2d 243 [2000]; *People v Chrysler*, 85 NY2d 413 [1995]; *People v Davis*, 72 NY2d 32 [1988]).

In *Suarez* we stated that depraved indifference reflects "wickedness, evil or inhumanity, as manifested by brutal, heinous and despicable *acts*" (6 NY3d at 214 [emphasis added]). A violent explosion in a heavily populated multiple-residence apartment building is a brutal, heinous and despicable act, and one who causes such act exhibits wickedness, evil and inhumanity.

There is no need that a defendant subjectively harbor a "wicked" or "evil" mind, as now required by the majority. Purposefully turning on the gas and creating such an explosion in an occupied apartment building—for whatever reason, here in an attempt to commit suicide—is " 'so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy' as to render the actor as culpable as one whose conscious objective is to [cause injury to others]" (*Suarez*, 6 NY3d at 214, quoting *People v Russell*, 91 NY2d 280, 287 [1998]). Defendant's acts in creating an explosive gas

environment evince a depraved disregard for the nearly certain consequences of his irresponsible acts. That defendant was focused on his troubles and himself does not render his actions any less irresponsible nor should it provide immunity from prosecution for a felony charge.[3] Conduct evincing depraved indifference to human life is not excusable because defendant's mind was elsewhere or because he turned a blind eye to the potential danger.

Only six months ago in *Suarez*, we "depart[ed] slightly from the *Register* formulation" only to make clear that the "additional requirement of depraved indifference has meaning independent of the gravity of the risk" (6 NY3d at 215).[4] In defining the second element of depraved indifference murder, we did not, however, create a separate mens rea requiring an analysis of a defendant's subjective intent. The gravity of risk was created by defendant's act of flooding his apartment with gas and turning it into a bomb that needed only an ignition source. It was not necessary for the People to prove that in addition to the extremely reckless nature of defendant's conduct, he acted with an " 'uncommonly evil and morally perverse frame of mind' " (*Sanchez*, 98 NY2d at 383, quoting 98 NY2d at 396 [Rosenblatt, J., dissenting]). When viewed objectively, defendant manifested "an utter disregard for the value of human life" (*Suarez*, 6 NY3d at 214).

We have identified several quintessential examples of conduct—rare circumstances—evincing depraved indifference to human life, among them the placing of a time bomb in a public place (*see Suarez*, 6 NY3d at 214). So too the situation here is so inherently dangerous to the lives of others that it should be likewise classified as one of those rare circumstances demonstrating such an utter disregard for the lives of others evincing an actor's depraved indifference to human life.

I would thus affirm the conviction and hold as the Appellate Division, not on the strength of *Register* but on the teachings of

---

**3.** Penal Law § 120.20 defines reckless endangerment in the second degree as when a person "recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." This crime is a class A misdemeanor.

**4.** Certainly the per curiam opinion in *Suarez* represented "the concurrence of four . . . necessary to a decision" (NY Const, art VI, § 2 [a]). The majority did not implicitly or "explicitly" overrule *Register* and *Sanchez*, nor had they been "de facto overruled in prior cases" (majority op at 296). The concurrence of three in *Suarez* would have preferred that result, and achieves it here.

*Suarez*, that "[r]eckless endangerment does not require a show-ing of extreme wickedness or abject moral deficiency on the part of the perpetrator" (*People v Feingold*, 22 AD3d 242 [1st Dept 2005], citing *People v Narimanbekov*, 258 AD2d 417 [1st Dept 1999]). It is sufficient that the defendant recklessly engaged in conduct which created a grave risk of death to others and that this defendant did so under circumstances evincing a depraved indifference to human life as we defined it in *Suarez*.[5]

Furthermore, this construction is in keeping with the plain language of the statute and its legislative intent. Here the Legislature used the term "recklessly" to define the mens rea element of first-degree reckless endangerment (*see* Penal Law § 15.05 [3]; § 120.25). A defendant thus must act "recklessly." The additional element that this reckless conduct must be com-mitted "under circumstances evincing a depraved indifference to human life" (Penal Law § 120.25) refers not to a mental state but to the factual circumstances under which the crime oc-curred (when viewed objectively) evincing a depraved indiffer-ence to human life. The Legislature was free to retain the old "depraved mind" language but chose to forgo that in favor of a requirement of indifference (*see Suarez*, 6 NY3d at 210 n 4).

Lastly, there is no question here that defendant acted extremely recklessly, as even Supreme Court opined. Its further assessment of defendant's subjective mental state was totally ir-relevant. As the trial judge noted, he was expressing a "concern" and would have acquitted defendant if the law was as stated in the dissenting opinions of *Register* and *Sanchez*. His expression of concern does not require us to address directly the question of mens rea, as the majority believes it does (majority op at 294). Certainly a trial judge is free to say what he or she believes the law should be but is nonetheless bound to apply the law as it is. We would expect no less from a jury, which is free to privately disagree with the law but is bound to accept it as charged by the judge. The judge here was not required to go be-yond his verdict of guilty.

Accordingly, I would affirm the order below.

Chief Judge Kaye (dissenting). I join fully in Judge Ciparick's

---

5. The abuses that we have sought to correct—the prosecution of twin-count indictments under both intentional and depraved indifference theo-ries—are *not* present here. I see no need to go beyond what we held in *Suarez* to expand the definitional scope of depraved indifference by holding that proof of depraved indifference now requires an assessment of defendant's subjective intent, especially in a case involving multiple potential victims.

dissent. I write separately in light of the majority's decision to overrule *People v Register* (60 NY2d 270 [1983]), in which I had joined. That extraordinary step is neither necessary, nor warranted, in this case.

Over the years, we have had a number of occasions to revisit *Register*, most recently in *People v Suarez* (6 NY3d 202 [2005]), barely six months ago. In *Suarez* this Court, in a per curiam opinion, "depart[ed] slightly" from the *Register* formulation by making clear "that the additional requirement of depraved indifference has meaning independent of the gravity of the risk" (6 NY3d at 215). We did not, however, retreat from a core holding of *Register*—that the requirement that a defendant act "under circumstances evincing a depraved indifference to human life" does not constitute a mental state.

As we explained in *Suarez*, there was good reason for our slight departure from *Register*. Experience had shown that the fine distinction between the "substantial" risk required to prove manslaughter in the second degree and the "very substantial" risk necessary to elevate the offense to depraved indifference murder had provided "insufficient guidance to prosecutors, courts and juries struggling to distinguish between these very different crimes" (6 NY3d at 215). Further, the proliferation of twin-count indictments alternatively charging defendants who had killed in the course of routine one-on-one confrontations with inconsistent theories had, over time, come to blur the distinction between intentional and depraved indifference murder. At least one federal court had expressed the view that the depraved indifference murder statute had become unconstitutionally vague (*see Jones v Keane*, 2002 US Dist LEXIS 27418 [US Dist Ct, SD NY, June 6, 2002], *revd on other grounds* 329 F3d 290 [2d Cir 2003]; *St. Helen v Senkowski*, 2003 US Dist LEXIS 26642 [US Dist Ct, SD NY, Sept. 19, 2003], *revd on other grounds* 374 F3d 181 [2d Cir 2004]).

In addressing these concerns, we made clear that depraved indifference "is best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (6 NY3d at 214). "[M]anifested by brutal, heinous and despicable acts, depraved indifference is embodied in conduct that is so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to render the actor as culpable as one whose conscious objective is to kill" (*id.* [internal quotation

marks and citations omitted]). Although three concurring Judges expressed a desire to overrule *Register*, the Court in *Suarez* decided the question by declining to take that step. Nothing has changed in the intervening weeks to warrant such action now. Certainly we have seen no evidence that the careful medicine administered in *Suarez* has failed to cure any perceived problems—indeed, it has scarcely had time to take effect.

The rule currently in place, though it may not be that favored by today's majority, is susceptible of ready application, and results in no injustice. Indeed, it is far more workable than the rule the majority adopts today, as evidenced by the case at hand.

Defendant, so focused on his desire to take his own life that (we are asked to believe)[1] he gave no thought whatsoever to the life or safety of others, recklessly caused a massive explosion by leaving on the gas jets in a densely occupied residential apartment building in the midst of Manhattan. Miraculously, no one was killed or injured. Both parties agree that the phrase "under circumstances evincing a depraved indifference to human life" must have the same meaning for purposes of the murder statute and the reckless endangerment statute, charged here. That being so, the majority would necessarily hold that this defendant could not have been convicted of depraved indifference murder even if hundreds of people had been killed by the explosion he so recklessly and wantonly caused. I cannot agree.

To my mind, defendant's extremely reckless conduct squarely evinced "an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (*Suarez*, 6 NY3d at 214). The majority would limit this level of disregard for the lives or safety of others to circumstances where the defendant consciously has in mind the likelihood of injury to innocent persons and nevertheless deliberately chooses to proceed with the dangerous course of conduct.

While I agree that depraved indifference *includes* these situations, I fail to understand why it must be *restricted* to such cases. In my view, "utter indifference" to human life easily covers instances in which a person undertaking a mortal act fails to consider the potential impact on his or her neighbors. Indeed, the failure to be at all concerned with the lives of others is the very epitome of depraved indifference, regardless of whether

---

1. Even the smell of gas in a residence should precipitate some investigation because danger is obvious.

such utter indifference arises from a malicious wickedness toward humanity or, as here, a complete unmindfulness of one's fellows born of total self-absorption.

In *People v Payne* (3 NY3d 266 [2004]), this Court identified two "species" of depraved indifference—one involving acts directed against a particular victim, "marked by uncommon brutality" but without an intent to kill; the other involving defendants who, "lacking the intent to kill (but oblivious to the consequences and with depraved indifference to human life) shoot[ ] into a crowd or otherwise endanger[ ] innocent bystanders" (3 NY3d at 271). The instant case fits squarely within this second category, which we have never before felt the need to restrict. Rather, in *Suarez*, where we carefully delineated the rare circumstances in which a one-on-one confrontation might properly result in depraved indifference murder, we noted that the "[q]uintessential examples" of depraved indifference involve situations in which more than one person is endangered (*Suarez*, 6 NY3d at 214).

By definition, depraved indifference murder can be found only where there is not an intent to kill. Its starting point is an unintentional killing. Thus, whatever underlying motive a defendant may have with respect to some goal unrelated to the ultimate victims of his actions, it is the conduct itself that demonstrates depraved indifference. Plainly, if a person boarded an empty train car and, in order to commit suicide, derailed the train, thereby killing passengers in other cars, there would be a quintessential depraved indifference murder. The case before us is no different.

If a defendant means to hurt someone, a finding of depraved indifference is precluded (*see Suarez*, 6 NY3d 202 [2005]; *Payne*, 3 NY3d 266 [2004]; *People v Gonzalez*, 1 NY3d 464 [2004]; *People v Hafeez*, 100 NY2d 253 [2003]). But if, as here, he succeeds in persuading a trier of fact that he *didn't* mean to hurt anyone, the Court also forecloses his conviction of any crime requiring a showing of depraved indifference. Legally sufficient evidence of depraved indifference cannot be rendered insufficient by a defendant's mere denial of guilt of the charged crime—that is, by a claim that "I didn't mean to hurt anyone; I never thought about whether anyone else might be in danger."

While defendant's denial that he considered his neighbors, if believed by the factfinder, would absolve him of culpability for intentional homicide, it is the very proof of his depraved indif-

ference. A person living in a multiple-residence apartment building who is about to engage in mortally dangerous conduct *should* give thought to those who might be around him—whether in the same apartment, in the building or in the area. Regardless of whether it simply didn't occur to defendant to think about others—or whether he did give a thought to their safety but just didn't care—either way he evinced a depraved indifference to human life.[2] For this he was convicted of a felony and sentenced to five years' probation. The majority concludes, however, that defendant's perilous acts made him culpable of no more than reckless endangerment in the second degree—a misdemeanor.

Contrary to the majority, the factfinder here did not find defendant "innocent of the core criminal element, depraved indifference" (majority op at 295 [emphasis deleted]). Rather, the factfinder simply believed that "defendant's state of mind was not one of extreme wickedness, or abject moral deficiency, or a mischievous disregard for the near certain consequences of his irresponsible act." But until today, such moral deficiency was not the test of depraved indifference. In other words, it does not matter that the trial judge believed that defendant would not have been guilty of a differently defined crime. Under *Register*, as well as *Suarez*, defendant's subjective mental state with respect to his potential victims was irrelevant. The People did not need to prove, as opined by the trial judge, that defendant acted *"because* of his lack of regard for the lives of others" (emphasis added), but merely that he acted *with* such disregard.

Finally, the Court's limitation on depraved indifference is not restricted to cases involving one-on-one confrontations. Rather, prosecution for the second "species" of depraved indifference—that in which multiple persons are endangered—will now also be foreclosed by a defendant's claim (if believed) that he or she didn't mean it. The majority today leaves nothing of depraved indifference but a risk for prosecutors in charging these offenses.

GRAFFEO, J. (dissenting). I continue to believe that *People v*

---

**2.** Of course, reckless endangerment in the first degree, like depraved indifference murder, also requires recklessness, which involves the conscious disregard of a known risk (*see* Penal Law § 15.05 [3]). Defendant does not contend that the trial proof was insufficient to establish the element of recklessness, and the trier of fact expressly found that defendant committed "an extremely reckless and foolish act."

*Suarez* (6 NY3d 202 [2005]) was wrongly decided since it deviated significantly from *People v Sanchez* (98 NY2d 373 [2002]) (*see People v Suarez*, 6 NY3d at 219 [Graffeo, J., concurring in part and dissenting in part]). Because the majority in this case goes further and overrules *Sanchez*, I agree with my dissenting colleagues that today's transformation of the well-settled meaning of "depraved indifference" from an objective factual assessment into a subjective mens rea requirement cannot be reconciled with the language of the reckless endangerment statute or the prior rationale of this Court (*see People v Suarez*, 6 NY3d at 219-228 [Graffeo, J., concurring in part and dissenting in part]). That being said, my dissenting colleagues have cogently explained why the facts of this case fit within the depraved indifference jurisprudence discussed in *Suarez* (*see id.* at 214) and defendant's conviction should be affirmed on this basis alone.

Judges ROSENBLATT, READ and R.S. SMITH concur with Judge G.B. SMITH; Judge CIPARICK dissents and votes to affirm in an opinion in which Chief Judge KAYE concurs; Chief Judge KAYE dissents in another opinion; Judge GRAFFEO dissents and votes to affirm in a separate opinion.

Order modified, etc.