*1051 OPINION OF THE COURT
Joseph C. Calabrese, J.
“[The law] is an embodied paradox, a bundle of contradictions."*
Defendant is charged with assault first degree (intentional) (counts 1, 2), assault first degree (depraved indifference) (counts 3, 4), assault second degree (intentional) (counts 5, 6), assault third degree (reckless) (counts 7, 8), reckless endangerment (count 9), leaving the scene of an incident without reporting (count 10) and driving while intoxicated (counts 11, 12).
He moves for an inspection of the grand jury minutes, specifically requesting such be done “in light of the Court of Appeals recent decisions regarding depraved indifference, whether legally sufficient evidence was presented to sustain the charges and whether the People properly instructed the grand jury on depraved indifference.”
Clearly, defendant would have this court focus upon the intentional/depraved dichotomy within counts 1, 2, 3, and 4 (which relate to two specific victims) as well as the intentional/ reckless dichotomy of counts 5, 6, 7 and 8 (which relate to two additional victims).
Examination of the grand jury minutes herein establishes, prima facie, the following:
On June 18, 2006, defendant was at a golf club’s outdoor café/ bar with friends and had been drinking alcohol. Adjacent to the café is a paved area divided into four aisles of parking. At the end of each of the two center aisles is a concrete and grass U-turn area which permits access to all parking. The café is at the nonentrance end of the two middle aisles and abuts the parking lot.
At approximately 2:30 a.m., an altercation occurred between defendant and another café patron. At the time defendant was escorted out of the bar to the parking area by S.B., one of the bouncers, and M.G., a patron. S.B. was restraining defendant who was cursing and threatened to “kill all you guys.”
The bar’s patrons came out to the parking lot to observe the altercation and were milling around as defendant finally walked to his car. He pulled out of the parking area, but upon reaching *1052 the exit end of the lot suddenly made a U-turn around the aisle and accelerated toward the crowd at a high rate of speed, hitting two bystanders, M.H. and S.M., causing physical injury and then continued to drive directly at S.B. and M.G. who he also hit, tossing them into the air with resultant serious physical injury to these individuals.
The long-standing line of cases had, until December 23, 2005, viewed the existence of intentional and depraved acts as being theories in the alternative, reasoning that intentional acts required a specific mens rea whereas depraved acts did not require a culpable mental state but rather a factual showing of actual depraved indifference (People v Register, 60 NY2d 270 [1983]; see, People v Gonzalez, 1 NY3d 464 [2004]; People v Payne, 3 NY3d 266 [2004]).
In People v Payne (supra at 272), the Court, holding that depraved indifference to a person’s life must be contrasted with an intent to take such, wrote:
“As the drafters of the Penal Law put it, depraved indifference murder is ‘extremely dangerous and fatal conduct performed without specific homicidal intent but with a depraved kind of wantonness: for example, shooting into a crowd, placing a time bomb in a public place, or opening the door of the lions’ cage in the zoo.’ ”
In People v Suarez (6 NY3d 202, 214-216 [2005]), the Court edged away from People v Register (supra) and its progeny and moved toward viewing depraved indifference as a culpable mental state, writing:
“We therefore make clear that depraved indifference is best understood as an utter disregard for the value of human life — a willingness to act not because one intends harm, but because one simply doesn’t care whether grievous harm results or not. Reflecting wickedness, evil or inhumanity, as manifested by brutal, heinous and despicable acts, depraved indifference is embodied in conduct that is ‘so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy’ as to render the actor as culpable as one whose conscious objective is to kill.
“Quintessential examples are firing into a crowd; driving an automobile along a crowded sidewalk at high speed; opening the lion’s cage at the zoo; placing a time bomb in a public place; poisoning a well *1053 from which people are accustomed to draw water; opening a drawbridge as a train is about to pass over it and dropping stones from an overpass onto a busy highway . . .
“When depraved indifference murder is properly understood, ‘twin-count’ indictments — charging both intentional homicide and depraved indifference murder — should be rare. Twin-count submissions to a jury, even rarer. For by the time the proof has been presented, it should be obvious in most cases whether or not the evidence establishes ‘an intentional [killing] or no other.’ Thus, where twin-count indictments are lodged, trial courts should presume ‘that the defendant’s conduct falls within only one category of murder and, unless compelling evidence is presented to the contrary, dismiss the count that is least appropriate to the facts.’
“In sum, whether a small, finite or rare category, depraved indifference murder should not be routinely charged to a jury. Focus on the three statutory factors that distinguish depraved indifference murder — ‘circumstances evincing a depraved indifference to human life,’ recklessness and ‘a grave risk of death to another person’ — should again make clear that the statute properly applies only to the unusual case.” (Citations omitted.)
Finally, in People v Feingold (7 NY3d 288, 294 [2006]), a four to three court overruled People v Register holding that “depraved indifference to human life is a culpable mental state.” The Court further stated (at 296-297):
“Our holding today will not, as the Chief Judge [in her dissent] fears, prevent depraved indifference murder convictions in cases where they are warranted. The mens rea of depraved indifference to human life can, like any other mens rea, be proved by circumstantial evidence. We agree that the Chief Judge’s hypothetical — ‘a person boarded an empty train car and, in order to commit suicide, derailed the train, thereby killing passengers in other cars’ — states a ‘quintessential’ case of depraved indifference murder, because in that case the circumstantial proof of depraved indifference would be compelling.”
Reading Feingold in conjunction with Suarez’s analysis of “twin-count” indictments results in a paradox leading this court *1054 to conclude that where the testimony before the grand jury can conceivably sustain either theory, the court must permit the indictment to go forward under both intentional and depraved indifference theories. Except for the most clear-cut of cases, failure to do so would require a trial court inspecting grand jury minutes to discern the defendant’s mens rea vis-á-vis intentional/depraved indifference based upon prima facie proof not subject to cross-examination or defense. Feingold clearly emphasizes the need, seen in Suarez, for the trial court to determine the proper count(s) to be submitted to the jury after presentment of all evidence.
To hold otherwise, would put the court in the untenable position of choosing a single theory under which the People must proceed and create a situation whereby the defense could proceed upon a strategy that a defendant is not guilty under the chosen theory but is otherwise culpable, at best, under the dismissed theory. The court is not and cannot be an advocate for or against either party.
Permitting a case to proceed under the alternative theories for which a grand jury has found prima facie evidence will ultimately allow each party to advocate their respective position and guarantee the court to be the impartial arbiter for which it was constitutionally created.
The case herein is one such case where defendant’s culpable mental state is not clearly discernable from the prima facie proof before the grand jury.
On the one hand, defendant had threatened to kill two specific individuals and ultimately drove at them causing serious physical injury. On the other hand, the proof fits one of the quintessential examples of depraved indifference by driving through a crowd without regard to the consequences.
The court has inspected the grand jury minutes, in camera, and finds that it is not necessary to release the minutes or any portion thereof to defendant’s attorney to assist the court in determining their legal sufficiency. (CPL 210.30 [3].)
Upon inspection of the grand jury minutes, this court finds that the evidence before the grand jury was legally sufficient to support each of the crimes charged in the indictment. (CPL 210.30.)
Further, the grand jury proceeding was not defective. Proper legal advice and adequate legal instructions were given by the District Attorney. (CPL 190.25 [6]; 210.35 [5].)
*1055 Defendant queries whether the People properly instructed the grand jury on depraved indifference. Instructions to the grand jury, so long as they are not so misleading or incomplete as to undermine the presentment, need not be with the same precision as those required for a petit jury. The grand jury must be provided with sufficient information to determine whether a crime has been committed and whether there is legally sufficient evidence to establish, prima facie, the material elements of the crime charged (People v Calbud, Inc., 49 NY2d 389 [1980]; People v Colon, 15 AD3d 777 [2005]; People v Hilaire, 270 AD2d 359 [2000]).
Of course, since a petit jury must reach its determination beyond a reasonable doubt, the legal instructions to that body must be of greater precision and comprehensiveness. (People v Mazyck, 6 Misc 3d 209 [2004].)
Finally, the indictment conforms to the requirements of CPL 200.50.
Accordingly, the application to dismiss or reduce the charges alleged in the indictment is denied.

 Adapted from 1 Charles Caleb Colton, Lacon: Or, Many Things in Few Words; Addressed to Those Who Think, No. 408 (1823).