(May 28, 2009)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY TAYLOR, Appellant. [882 NYS2d 1]—

Judgment, Supreme Court, Bronx County (Michael A. Gross, J.), rendered April 21, 2006, convicting defendant, after a jury trial, of depraved indifference murder in the second degree, and sentencing him to a term of 25 years to life, affirmed.

On May 11, 2004, a firefighter conducting a routine building inspection discovered the body of 42-year-old Ana Almono Fowler on the roof of a building located at 401 East 187th Street in the Bronx. A black plastic bag covered Fowler's head and was knotted tightly around her neck. When Fowler's body was found, she was barefooted, her sweatshirt pulled up over one of her breasts and her jeans unzipped and pulled partially down. One of two beaded necklaces around Fowler's neck was broken and beads were missing. After the plastic bag was peeled from Fowler's head, a wound above her right eyebrow and a bruise to her right cheek were noted.

The building at 401 East 187th Street is privately owned and used by the City of New York as a temporary housing facility. Defendant resided in the building in apartment 5E until May 6, 2004. The hallway of each floor of the building is monitored by two video cameras. Videos in evidence depict defendant ap-

proaching Fowler and entering his apartment with her on May 5 at 9:08 P.M., stepping back into the hallway and looking at the video camera on May 6 at 2:30 A.M., and carrying Fowler's body to the roof on the same day at 10:40 A.M. Shortly thereafter, defendant is seen leaving his apartment carrying a piece of white cloth and then reentering the apartment. Five minutes later, defendant is seen leaving the building carrying his belongings in a black plastic bag. Beads matching those on Fowler's broken necklace were found scattered throughout defendant's apartment by Detective Zoltan Karpati on May 13. Bloodstains were also found on the bedroom wall and door. On May 18, Detective Karpati took defendant into custody and escorted him to the precinct. While in custody, defendant made a series of statements of which five were handwritten and one videotaped.

According to defendant's statements, Fowler accompanied him to his apartment after agreeing to have sex with him in exchange for crack cocaine and money. Defendant stated that during the evening Fowler attacked him and he hit her in the head to protect himself. Thereafter Fowler became quiet and defendant fell asleep. Defendant stated that upon waking up the following morning, he heard Fowler's heartbeat, but he later denied hearing it. Defendant added that Fowler was bleeding and he placed the plastic bag on her head to stop the blood from spreading and because he couldn't stand to look at her. Thereafter, defendant dumped Fowler on the roof, gathered his possessions and vacated the building. A grand jury indicted defendant for depraved indifference murder and manslaughter in the first degree.

Dr. Zoya Shmuter of the Office of the Chief Medical Examiner of the City of New York performed an autopsy on Fowler's body. The autopsy revealed a one-half-inch laceration above Fowler's right eyebrow, purple discoloration of her face and abrasions on her cheek. Dr. Shmuter also found two abrasions on the right side of her neck. Upon opening the body's neck, Dr. Shmuter found hemorrhaging at the site of the abrasions. The hemorrhaging, Dr. Shmuter testified, was suggestive of a blunt force injury or compression. The autopsy report signed by Dr. Shmuter on May 27, 2004 listed the cause of death as blunt impact of the head and compression of the neck and chest.

Dr. James Gill, a deputy chief medical examiner, opined that the cause of Fowler's death was homicidal asphyxia. The term, Dr. Gill explained, encompasses smothering, compression of the neck, and compression of the chest. Dr. Gill explained that the purple discoloration of Fowler's face was consistent with neck compression. The anatomical findings noted by Dr. Gill also

included bruising of the large muscle on the right side of Fowler's neck, indicative of force applied to the area. Dr. Gill noted similar bruising on the right side of Fowler's chest. Dr. Gill opined that bleeding is a sign of life in a human body inasmuch as it is indicative of a heartbeat. He further opined that placing a plastic bag over a person's head could cause death by asphyxia.

At the close of trial, citing *People v Suarez* (6 NY3d 202 [2005]), defendant moved for an order of dismissal based upon the legal insufficiency of the evidence as follows: "What I suggest here, Your Honor, and the depraved indifference cases tend to fall into, at least in recent years, instances of child abuse, or abuse of spousal abuse, or abuse by one person against another, whether there's a familial relationship or not, that is protracted, that is prolonged that occurs not merely as the Court of Appeals noted in Suarez, in the course of a single incident, as opposed to substantial instances where there is a single incident that is isolated in its framework of time as opposed to continuing over a course of time . . . So, therefore under either theory that the People may be presenting here, we still are confined to a time period that has a minimum of five and a half hours, and a maximum of 13 and a half hours, clearly an isolated attack, as opposed to a course of conduct engaged in which would be considered to have been torturous, where the conscious objective would have been . . . to torture, to brutalize, to prolong and ultimately fatally bring to the end another person's life."*

Citing *People v Feingold* (7 NY3d 288 [2006]), defendant now challenges the legal sufficiency of the evidence as follows: "The evidence in this case rationally supported three possibly antagonistic, but equally plausible hypotheses. Either the victim was in fact dead in the morning when appellant found her turning purple on the floor, in which case appellant killed her during their crack addled struggle the night before—a manslaughter theory which was argued against by the People and which leaves open the question of self defense . . . Or, appellant mistakenly and recklessly or negligently believed that the unconscious victim was already dead. He tied a bag over her face to avoid looking at her and inadvertently suffocated her—a reckless manslaughter or negligent homicide. Or, finally, as the prosecutor

---

* Indeed, the majority in *Suarez* observed: "although we have reversed depraved indifference murder convictions in most cases involving isolated attacks, we have held that the crime is nevertheless established when a defendant—acting with a conscious objective not to kill but to harm—engages in . . . a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim" (*People v Suarez*, 6 NY3d at 212).

argued in summation, the appellant found the victim on the floor in the morning, knew that she was unconscious but still breathing and tied a bag over her face with a conscious objective to kill her—an intentional murder. No reasonable view of the evidence, however, is consistent with depraved indifference murder."

To preserve a legal sufficiency challenge for appellate review, a defendant must move for a trial order of dismissal, and the argument must be "specifically directed" at the error being urged (*People v Hawkins*, 11 NY3d 484, 492 [2008]). As noted above, defendant's argument at trial was confined to calling into question the time frame with respect to the conduct constituting depraved indifference murder. We disagree with the dissent's view that in making this argument, defendant took the global position he now takes that the evidence did not establish the "brutal, prolonged and ultimately fatal course of conduct" required under *Suarez* (*see People v Suarez*, 6 NY3d at 212). In this regard, defendant's appellate challenge to the legal sufficiency of the evidence has not been preserved inasmuch as his trial motion to dismiss was based on a different argument (*see People v Wells*, 53 AD3d 181, 188-189 [2008], *lv denied* 11 NY3d 858 [2008]; *People v Crawford*, 38 AD3d 680, 681 [2007]). We further decline to reach the issue in the interest of justice.

Defendant also posits that the verdict is against the weight of evidence because the evidence shows that Fowler was already dead when defendant covered her head with the plastic bag tied around her neck. Our weight of the evidence review requires us to first determine whether an acquittal would not have been unreasonable (*People v Danielson*, 9 NY3d 342, 348 [2007]). If so, we must next weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions (*id.*). Then, based on the weight of the credible evidence, we must next decide whether the jury was justified in finding defendant guilty beyond a reasonable doubt (*id.*). In conducting the required analysis, based upon the evidence adduced at trial we determine that an acquittal of the charge of depraved indifference murder would have been unreasonable. We would note, in any event, that a weighing of the evidence supports the conclusion that Fowler was fatally asphyxiated by defendant's placing of the plastic bag over her head and knotting the same around her neck. The conclusion would be supported by defendant's statement that he heard Fowler's heartbeat before placing the bag over her head. The conclusion would have further support in Dr. Gill's testimony that homicidal asphyxia, the cause of death

that encompasses smothering, could have been brought about by use of the plastic bag. Dr. Gill's opinion is that Fowler's bleeding was an indication that she was alive when smothered by the plastic bag. Concur—Gonzalez, P.J., Moskowitz, DeGrasse and Freedman, JJ.

McGuire, J., dissents in a memorandum as follows: I respectfully dissent as I believe the conviction for depraved indifference murder is not supported by legally sufficient evidence.

In *People v Suarez* (6 NY3d 202 [2005]) the Court of Appeals made clear that when only one person is endangered by the defendant's conduct, a conviction for depraved indifference murder is authorized in only two categories of cases, both of which "reflect wanton cruelty, brutality or callousness directed against a particularly vulnerable victim, combined with utter indifference to the life or safety of the helpless target of the perpetrator's inexcusable acts" (*id.* at 213). First, "when the defendant intends neither to seriously injure, nor to kill, but nevertheless abandons a helpless and vulnerable victim in circumstances where the victim is highly likely to die, the defendant's utter callousness to the victim's mortal plight—arising from a situation created by the defendant—properly establishes depraved indifference murder" (*id.* at 212). Second, "the crime is . . . established when a defendant—acting with a conscious objective not to kill but to harm—engages in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim" (*id.*).

At the close of the People's case, defendant moved to dismiss the charge of depraved indifference murder on the ground that it was not supported by legally sufficient evidence. Although defendant's argument was multifaceted, he relied in particular on *People v Suarez* and argued that the evidence established "a time period that has a minimum of five and a half hours, and a maximum of 13 and a half hours, clearly an isolated attack, as opposed to a course of conduct engaged in which would be considered to have been torturous, where the conscious objective would have been . . . to torture, to brutalize, to prolong and ultimately fatally bring to the end another person's life." In my view, a fair reading of this argument is that defendant objected that as a matter of law the evidence did not establish depraved indifference murder under the second of the two categories recognized in *Suarez*.

On this appeal, particularly at pages 17 to 18 of his brief, defendant asserts precisely this claim. Although he also advances other arguments that appear not to be preserved for review, his claim that the evidence did not establish depraved indifference

murder under the second category recognized in *Suarez* is preserved for our review. The People do not and could not contend that defendant engaged in "torture," and thus the conviction can be sustained only if the evidence is legally sufficient to establish that defendant engaged in a "brutal, prolonged . . . course of conduct against a particularly vulnerable victim." Regardless of whether the victim died as a result of being smothered by defendant (through compression of the neck or chest) or as a result of defendant tying the plastic bag around her neck, the evidence did not establish the kind of "brutal" and "prolonged" course of conduct that, when a single person is endangered by the defendant's conduct, is necessary under the second category recognized in *Suarez*. To hold otherwise would be inconsistent with the pronouncement in *Suarez* that "[a] defendant may be convicted of depraved indifference murder when but a single person is endangered in only a few rare circumstances" (6 NY3d at 212).

The majority understands defendant's motion for a trial order of dismissal to have been "confined to calling into question the time frame with respect to the conduct constituting depraved indifference murder." Particularly given defense counsel's repeated reliance on *People v Suarez* and that *Suarez* sets forth so unequivocally the required proof in each of the two categories of cases, I submit that the majority reads counsel's argument too narrowly. The most that fairly can be said is that counsel stressed the "time frame" at various points. But counsel also repeatedly argued that the evidence had established only an "isolated attack" and, as quoted above, contrasted such an attack "to a course of conduct engaged in which would be considered to have been torturous, where the conscious objective would have been . . . to torture, to brutalize, to prolong and ultimately fatally bring to the end another person's life." Moreover, at the end of his argument, counsel argued as follows: "But the bottom line, Judge, is that the nature of what the Court of Appeals has focused on in depraved indifference . . . make[s] it pretty clear that this type of charge is one that has a greater applicability in the *types of cases* that *Suarez* addresses as opposed to the type of case this is" (emphasis added).

In opposing the motion, moreover, the prosecutor made clear that he understood counsel's argument to be a broader one that called into question the sufficiency of the proof in light of the requirements of the two categories of cases identified in *Suarez*, not merely the "time frame" of defendant's conduct. Indeed, the prosecutor began his argument in opposition as follows: "I agree that one of the standards is whether the particular victim

is particularly vulnerable, and in this case it's clear she was. And in this particular case, you can point to a period of prolonged suffering the victim would have gone through." Thus, the prosecutor understood defendant to be challenging the sufficiency of the proof on the issues of whether the victim was "particularly vulnerable," whether the defendant had engaged in a "prolonged" course of conduct and whether that conduct caused "suffering" (i.e., whether it was "brutal"). And the court then denied the motion "for the reasons argued persuasively by the prosecutor." Because the court thus ruled on each of these three issues, defendant has preserved each of them for review (*People v Feingold*, 7 NY3d 288, 290 [2006] [although the People contended that defendant's challenge to the sufficiency of the evidence convicting him of depraved indifference reckless endangerment murder was "unpreserved because he did not plainly present it to the trial court," the challenge was preserved because the trial judge "specifically confronted and resolved th(e) issue"]).

Even under the majority's narrow view of defendant's motion to dismiss, the claim that the evidence was legally insufficient to establish a "prolonged" course of conduct is preserved for review. The victim may have been in defendant's apartment for a "prolonged" period. But the question is whether the conduct of defendant that caused her death, even assuming it was "brutal" within the meaning of the term as set forth in *Suarez* and the cases cited in *Suarez*, was committed over a "prolonged" period of time. The fatal acts could have been committed over a period of mere minutes, and in my view no reasonable juror could conclude from the evidence that those acts had been committed over a "prolonged" period.

As I would hold that the evidence was legally insufficient to establish that the fatal acts were committed either in a "brutal" fashion or over a "prolonged" period, I need not consider whether it was legally sufficient to establish that the victim was "particularly vulnerable." I note, however, that the People's position that the victim was "particularly vulnerable" depends on the sufficiency of the proof that the victim was alive but unconscious, and that defendant knew it, when he tied the plastic bag around her neck. The majority does not explain how the People proved beyond a reasonable doubt that she was alive or unconscious at that point, or that defendant knew she was alive.

Accordingly, I would reverse the conviction for depraved indifference murder, dismiss the first count of the indictment charging that crime and remand for a new trial on the second count of the indictment charging manslaughter in the first degree (*see Matter of Suarez v Byrne*, 10 NY3d 523 [2008]).