■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ZAHIRA MATOS, Appellant. [921 NYS2d 66]—

Judgment, Supreme Court, New York County (Maxwell Wiley, J.), rendered September 15, 2008, convicting defendant, after a jury trial, of murder in the second degree and two counts of endangering the welfare of a child, and sentencing her to an aggregate term of 20 years to life, unanimously affirmed.

The verdict was based on legally sufficient evidence and was not against the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]). Defendant was convicted of depraved indifference murder of a child (Penal Law § 125.25 [4]) in connection with the death of her approximately two-year-old son, who was beaten to death by the codefendant, defendant's domestic partner.

It is undisputed that only the codefendant inflicted the fatal injuries, and that she did so solely on the particular night the child died. There is no claim that defendant inflicted any of the injuries either personally or while acting as an accessory under Penal Law § 20.00, or that any prior child abuse contributed to the child's death. Defendant's liability was based entirely on her failure to perform the duty of obtaining medical attention for her injured child. In this extraordinary case, that omission satisfied the requirements of depraved indifference murder under *People v Suarez* (6 NY3d 202 [2005]) and *People v Feingold* (7 NY3d 288 [2006]).

Both the sufficiency (*see People v Sala*, 95 NY2d 254, 260 [2000]) and the weight (*see People v Noble*, 86 NY2d 814, 815 [1995]) of the evidence are evaluated according to the court's jury instructions. Here, the court instructed the jury, without objection, that the risk-creating conduct may include an omission to perform a legally required act. In any event, that instruction was appropriate in the context of this case, because depraved indifference may be based on a parent's egregious failure to prevent harm to his or her child (*see People v Gratton*, 51 AD3d 1219, 1221 [2008], *lv denied* 11 NY3d 736 [2008]).

The evidence overwhelmingly established that defendant knew her son had sustained devastating, life-threatening injuries and was in severe pain. Nevertheless, she did not call an ambulance or take her son to the hospital. Instead, she and the codefendant made worthless efforts to treat the child with home remedies. Defendant otherwise ignored her child's injuries over a period of seven hours. During this time, defendant made

casual telephone calls without mentioning the child's injuries, drank beer and smoked, and then went to sleep. She finally called 911 at or around the time the child died. Even then, she took the time to dispose of potentially incriminating evidence before making the call. Furthermore, she admitted that she did not seek medical attention earlier because she was afraid of being blamed for the injuries. The fact that she deliberately placed her own interests ahead of her son's need for emergency treatment is strong evidence that her omission evinced depraved indifference rather than mere recklessness or negligence.

Turning to defendant's other claims, we find that the court properly declined to receive expert testimony on abusive domestic relationships, including social and psychological factors relating thereto. Defendant offered this evidence solely to explain why she did not end her relationship with the codefendant during the months leading up to the homicide, a period in which the codefendant was abusing both defendant and the child. The indictment set forth a time frame for the depraved indifference murder that included the two months leading up to the child's death. However, by the time of the trial the People had expressly limited themselves to the theory that defendant's liability was based solely on her failure to obtain medical attention for the child on the particular night he died, rather than anything she did or omitted to do in the two preceding months. Accordingly, evidence explaining why she remained with the codefendant would have been irrelevant and potentially misleading (cf. *People v Bryant*, 278 AD2d 7 [2000], *lv denied* 96 NY2d 757 [2001]).

The proffered evidence was not rendered relevant by anything that occurred during the trial. While there were brief, peripheral background references to the events leading up to the child's death, the prosecution never made any kind of a claim that defendant should have ended her relationship with the codefendant.

To the extent that defendant is claiming that the expert testimony was relevant to any issue other than her failure to end the relationship, that claim is unpreserved and we decline to review it in the interest of justice. As an alternative holding, we find that defendant has similarly failed to establish any relevance for this evidence. In any event, regardless of whether the expert testimony was admissible on the proffered basis or any other basis, we find that such evidence could not have affected the verdict. We also find no violation of defendant's constitutional right to present a defense.

The court properly denied defendant's suppression motion in all respects. Defendant's statements made prior to *Miranda*

warnings were not the product of custodial interrogation, because a reasonable innocent person in defendant's position would not have thought she was in custody (*see People v Yukl*, 25 NY2d 585 [1969], *cert denied* 400 US 851 [1970]; *see also Stansbury v California*, 511 US 318 [1994]). Throughout the pre-warnings period, the police did not restrain defendant in any way or do anything to convey that they had decided to make an arrest (*see People v Dillhunt*, 41 AD3d 216 [2007], *lv denied* 10 NY3d 764 [2008]). While there were times that officers asked or instructed defendant to go or remain somewhere, these statements reasonably appeared, in context, to be the kind of requests that would be made to a mother of an injured child who is cooperating in an investigation, rather than directions given to a person in custody. The hearing evidence also established that all of defendant's statements were voluntary, as well as that defendant voluntarily consented to the search of her apartment.

We have considered and rejected defendant's claims that she received ineffective assistance of counsel regarding the proffer of expert testimony, that the grand jury was improperly instructed, and that she did not receive proper notice of the theory of prosecution.

We perceive no basis for reducing the sentence. Concur— Tom, J.P., Mazzarelli, Acosta, Renwick and Freedman, JJ.