[832 NYS2d 546]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KHALIL
DANIELSON, Also Known as KHALI DANIELSON, Appellant.

First Department, March 27, 2007

APPEARANCES OF COUNSEL

*James Neuman*, New York City, for appellant.

*Robert T. Johnson, District Attorney*, Bronx (*T. Charles Won, Joseph N. Ferdenzi* and *Nancy D. Killian* of counsel), for respondent.

**OPINION OF THE COURT**

GONZALEZ, J.

On this appeal, defendant asks us to reverse his conviction of depraved indifference murder on the grounds that the trial evidence was legally insufficient to support such conviction, or, alternatively, because the jury's verdict was against the weight of the evidence. We reject both arguments because defendant failed to preserve his legal sufficiency claim and his weight of the evidence argument fails to demonstrate that the jury's credibility determinations were in error. Moreover, in a criminal case such as this, where a defendant's argument for appellate reversal rests on the unseemly assertion that he is entitled to relief because he intentionally murdered the victim, rather than having recklessly caused his death, no plausible argument can be made that review of defendant's claim is in the interests of justice. Accordingly, defendant's conviction of depraved indifference murder should be affirmed.

The facts underlying defendant's conviction and the conduct of the trial proceedings are accurately summarized by the dissent. The prosecution's evidence showed that defendant and two accomplices, all members of a gang known as the Bloods, executed a plan to kill the victim based on his offense of wearing the colors of a rival gang, also known as "false flagging." Witnesses testified that defendant was one of three shooters,

and that the deceased victim was struck by 11 shots, at least two of which, striking the victim in the back of the head and abdomen, were potentially fatal.

Initially, we agree with the dissent that defendant's legal sufficiency claim is unpreserved. Defendant's motion for a trial order of dismissal was predicated exclusively on the lack of credible evidence that he was present at the murder scene. There was no mention of the argument he now raises on appeal, namely, that the trial evidence supported only a theory of intentional murder, not a reckless one committed under circumstances evincing a depraved indifference to human life. Because defendant's dismissal motion was not specifically directed at the alleged insufficiency that he now raises on appeal (*People v Gray*, 86 NY2d 10 [1995]), the claim is unpreserved as a matter of law (*People v Lisojo*, 27 AD3d 215 [2006], *affd* 7 NY3d 873 [2006]), and we decline to review it in the interests of justice.

With respect to defendant's weight of the evidence claim, a discrete analysis is required (*People v Bleakley*, 69 NY2d 490, 495 [1987]). Weight of the evidence review is mandated by statute if requested by an appealing defendant (CPL 470.15 [5]; *People v Bleakley*, 69 NY2d 490, 493 [1987]). It requires the appellate court to "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences" in order to determine if "the trier of fact has failed to give the evidence the weight it should be accorded" (*id.* at 495 [internal quotation marks and citations omitted]). And, most importantly, "the Appellate Division is constrained to weigh the evidence in light of the elements of the crime as charged without objection by defendant" (*People v Noble*, 86 NY2d 814, 815 [1995]; *see also People v Cooper*, 88 NY2d 1056, 1058 [1996]).

At the outset, there are two distinct weight of the evidence arguments made on this appeal—one by the defendant and one by the dissent—and only the former is properly before this Court. Typically, a criminal defendant's appellate claim that a verdict is against the weight of the evidence has focused on the quality or reliability of the factual proof that led to the defendant's conviction (*see Bleakley*, 69 NY2d at 495). It is designed to afford an intermediate appellate court an opportunity to "form a conclusion as to the facts" and to determine whether "the evidence is of such weight and credibility as to convince [the court] that the jury was justified in finding the defendant guilty beyond a reasonable doubt" (*People v Crum*, 272 NY 348, 350 [1936]).

Consistent with this understanding of the role of weight of the evidence review, defendant in this case argues that the verdict must be set aside because the testimony of prosecution witnesses Green and Matthews was "incredible" and "unworthy of belief." Defendant's brief offers numerous reasons for discrediting their testimony, such as their obvious motive to shift blame from themselves, their criminal or psychiatric histories, the fact that they were testifying pursuant to cooperation agreements and the fact that their testimony was riddled with inconsistencies. Thus, the arguments raised by defendant reflect a traditional notion of a weight of the evidence inquiry— i.e., one which asks the court to evaluate the weight of the witnesses' testimony and the permissible inferences to be drawn therefrom in order to determine the facts of the case (*see People v Cahill*, 2 NY3d 14, 57 [2003]).

While these arguments are certainly appropriate for purposes of weight of the evidence review, they are not persuasive. None of the alleged flaws in the prosecution witnesses' testimony are sufficient to overcome the deference that is customarily shown to jury determinations of credibility (*see People v Hernandez*, 291 AD2d 263 [2002], *lv denied* 98 NY2d 697 [2002]). The jury in this case fairly could have concluded that the inconsistencies in the witnesses' testimony regarding the shooting were the product of naturally differing perceptions of a startling and stressful event (*see People v Romero*, 7 NY3d 633 [2006]).

With respect to the dissent's different weight of the evidence analysis, we note that it does not address a single point raised by defendant in his brief regarding the lack of credibility of the prosecution's two main witnesses—which, again, is defendant's exclusive basis for asserting that the verdict is against the weight of the evidence. In fact, the dissent does not comment on the "weight," quality or persuasiveness of the witnesses' testimony in any respect. Instead, it focuses exclusively on the issue of whether the proof satisfied the elements of recklessness and depraved indifference, and, conversely, whether the evidence of defendant's intentional conduct negates either of these two elements. The problem with this analysis is that defendant never raised this argument in his brief with respect to his weight of the evidence claim. Thus, the dissent essentially ignores the defendant's weight of the evidence argument and substitutes its own. In my view, it would be highly inadvisable for this Court to decide a weight of the evidence claim based on a theory never

raised by defendant. Accordingly, I would find that the weight of the evidence claim sua sponte raised by the dissent is not properly before this Court.

Even if the dissent's analysis were properly before us, I would reject the claim on the merits. The dissent concludes that the conviction for depraved indifference murder was against the weight of the evidence because "[t]here is simply no view of the trial record which could support the objective conclusion that defendant's 'homicidal level of mental culpability' was recklessness" because "[t]his was a calculated murder." Significantly, the dissent volunteers that this determination is "not based upon the Court of Appeals' reformulation of its view of 'depraved indifference,' as articulated in *People v Feingold* (7 NY3d 288, 294 [2006])," but rather is premised on "the permissible inferences to be drawn from the trial evidence as viewed against the elements of depraved indifference murder as charged to the jury in 2001, when this trial took place."

Notwithstanding the above disclaimer, the dissent has indeed weighed the evidence in light of the current interpretation of the depraved indifference murder statute (*see People v Feingold, supra; People v Suarez*, 6 NY3d 202 [2005]), instead of the elements of that crime as charged to the jury and interpreted by the Court of Appeals in 2001. In 2001, the governing precedent concerning the elements of depraved indifference murder was *People v Register* (60 NY2d 270 [1983], *cert denied* 466 US 953 [1984], *overruled by People v Feingold, supra*). In *Register* (*supra* at 277), the Court of Appeals held that recklessness is the mens rea for depraved indifference murder and that "the focus of the offense is not upon the subjective intent of the defendant, as it is with intentional murder, but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct" (citations omitted).

More to the point, however, is that under *Register*, strong proof of intent to kill did not foreclose the jury from finding recklessness or depraved indifference (*see Policano v Herbert*, 7 NY3d 588, 600 [2006]). The thinking at the time was that even where compelling circumstantial evidence of intent to kill existed, the question of the defendant's state of mind is a classic jury question (*id.* at 599, citing *People v Flack*, 125 NY 324, 334 [1891] [even with strong proof of criminal intention, the question of intent can never be ruled as a question of law, but must always be submitted to jury]; *People v Gallagher*, 69 NY2d 525, 530 [1987] ["(i)t is not for the (court) in the first instance to

determine whether defendant acted intentionally or recklessly at the time of the crime"]).

In addition, under *Register* the element of "circumstances evincing a depraved indifference to human life" was almost invariably met if a defendant's actions "created an almost certain risk of death by, for example, shooting the victim in the head multiple times at close range" (*Policano,* 7 NY3d at 600; *see also People v Sanchez,* 98 NY2d 373, 378 [2002] [shooting into victim's torso at point-blank range presented such a transcendent risk of death that it readily met the level of depravity needed for depraved indifference murder]).

Thus, in 2001, at the time of this defendant's trial, neither strong circumstantial proof of an intent to kill nor the existence of factual circumstances supporting a compelling inference that defendant's conduct created a risk of death approaching certainty, stood as a bar to a jury's conviction of depraved indifference murder. As noted in *Policano* (7 NY3d at 601), "[t]his was the law of the State of New York" at that time.

Accordingly, because this Court is constrained to weigh the evidence in light of the elements of depraved indifference murder as charged without objection by defendant (*People v Noble,* 86 NY2d at 815), and in light of how those elements were understood and judicially interpreted in 2001, we find that the verdict was not against the weight of the evidence. One trial witness testified that defendant was the first to fire eight shots at the victim, followed by four or five more shots from his accomplices. Another witness testified that defendant was not the first to fire, but that he fired the second round of shots as the victim was falling. There was also testimony from one of the accomplices that defendant was a party to the agreement to kill the victim as a penalty for "false flagging." Although this evidence certainly raises a strong inference that defendant acted with intent to kill, under the *Register* formulation that question was exclusively for the jury.

It should also be noted that there was no specific evidence as to whether any of the shots fired by defendant struck the victim or, if they did, where they entered the victim's body. Additionally, several of the shots either grazed the victim or were not in locations that would necessarily result in fatal injury. Thus, consistent with the court's depraved indifference instructions to the jury (outlined in the dissent's opinion), to which defendant raised no objection, this jury fairly could have concluded that defendant recklessly shot at the victim under circumstances

evincing a depraved indifference to human life (*Policano*, 7 NY3d at 601-602).

Finally, we are compelled to note that the dissent's holding would seriously undermine the long-standing doctrine of preservation of error in criminal cases (CPL 470.05 [2]; *People v Gray*, 86 NY2d 10 [1995], *supra*). The dissent concedes that defendant's legal insufficiency claim is unpreserved for appellate review and that interest of justice review is inappropriate. Thus, other than for the purpose of requesting that this Court exercise its interests of justice jurisdiction (CPL 470.15 [6] [a]), defendant's argument that the elements of "recklessness" and "circumstances evincing a depraved indifference to human life" were not proven, should be beyond the reach of this Court.

Instead, however, the dissent would hold that defendant may bring this element-based claim in the form of a weight of the evidence challenge, since such a challenge is statutorily permitted and may be raised for the first time on appeal (CPL 470.15 [5]). We disagree. The dissent's weight of the evidence challenge is nothing more than an unpreserved legal sufficiency claim. As noted, the dissent's analysis does not even discuss the "weight" of evidence, but merely concludes that the totality of evidence fails to establish the element of recklessness.

In our view, weight of evidence review was not intended to be a substitute or backup review for an unpreserved sufficiency claim. Rather, it was intended to function as a second layer of factual review, following a determination that the trial evidence is legally sufficient, i.e., that it satisfies all of the elements of the crimes charged (*see People v Mateo*, 2 NY3d 383, 410 [2004], *cert denied* 542 US 946 [2004], quoting *Cahill*, 2 NY3d at 57, quoting *Bleakley*, 69 NY2d at 495 ["weight of the evidence review recognizes that '(e)ven if all the elements and necessary findings are supported by some credible evidence, the court must examine the evidence further' "]; *see also* Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 470.15, at 530 ["(r)eversals based upon the weight of the evidence occur where the evidence is legally sufficient but the intermediate appellate court disagrees with the jury or trial court's resolution of conflicting facts"]).

Allowing element-based weight of the evidence challenges would eliminate the preservation rule for legal sufficiency claims. In future cases where the trial evidence was legally insufficient, but the defendant fails to preserve this legal challenge by specifically arguing the alleged deficiency in his or her

motion to dismiss, that defendant may obtain the exact same review on appeal by asserting that the verdict was against the weight of the evidence. Thus, any seasoned appellate attorney will always be able to obtain legal sufficiency review notwithstanding trial counsel's failure to preserve the claim at trial. An interpretation of this State's rules of appellate procedure that permits our long-standing preservation rule to be so easily circumvented should be avoided. Accordingly, we hold that defendant's unpreserved element-based argument does not constitute a proper weight of the evidence challenge, as contemplated by CPL 470.15 (5) and *People v Bleakley (supra)*.

Finally, defendant's motion to suppress a photo identification was properly denied. The suppression court properly determined, after a hearing, that the photo identification was confirmatory on the ground that the identifying witness and the defendant were known to each other (*see People v Rodriguez*, 79 NY2d 445, 450 [1992]).

Accordingly, the judgment of the Supreme Court, Bronx County (John S. Moore, J.), rendered January 2, 2002, convicting defendant, after a jury trial, of murder in the second degree, and sentencing him to a term of 20 years to life, should be affirmed.

MAZZARELLI, J.P. (dissenting). Defendant was found guilty of depraved indifference murder for the shooting death of Kenneth Andrews, which took place on July 14, 1998, in Seton Falls Park.* A pretrial suppression hearing was held regarding, among other matters, a photographic identification of defendant. At the time of this hearing defendant had two codefendants. A police detective testified that on July 27, 1998 he interviewed an individual who claimed to have been defendant's friend. This witness told the detective that he accompanied defendant, the two codefendants, and the victim, Kenneth Andrews, to Seton Falls Park. He said the group spent about an hour together, and that he then saw defendant and the codefendants fire multiple gunshots at Andrews. According to the detective, the witness told him that he had "hung out" with defendant and a number of others every day for the prior month, and that he and defendant both lived at group homes on the same campus.

On the same night, the detective who interviewed this wit-

---

* Originally, two other individuals were charged with defendant. One of the two testified at trial pursuant to a cooperation agreement. The other was acquitted after a jury trial.

ness arrested defendant at his group home at 12:15 A.M. The detective testified to remembering that when he made the arrest, he recovered a red bandana from defendant's front pants pocket. Approximately 20 minutes after the arrest, the detective showed the same witness a photograph of defendant. The witness positively identified defendant as one of those who shot Andrews in the park. After hearing the detective's testimony, the court denied the motion to suppress the witness's photo identification, deeming it confirmatory.

At trial, the prosecution presented testimony from one of the original codefendants, the friend whose identification was challenged at the suppression hearing, the arresting detective, a police officer who found Andrews's body, and the medical examiner. These witnesses collectively related that defendant, who was nicknamed KB or Killer Blood, belonged to a gang called the Bloods, whose members wore the colors red and green. The accomplice witness testified that he was told that Kenneth Andrews, also a member of the Bloods, was seen wearing a blue bandana. Blue is apparently the color of a rival gang called the Crips. The accomplice related that he, defendant, and a third man agreed that Andrews should be killed for "false flagging," i.e., "[s]aying you're a Blood and then changing to another gang, the Crips." According to the accomplice, the three decided to take decedent to Seton Falls Park the next day for the express purpose of killing him.

The unindicted witness-friend testified that on July 14, 1998, at approximately 10:30 P.M., he, defendant, Andrews and a number of other people went to an isolated area of Seton Falls Park. This witness recalled thinking that the group was going to the park to drink, and to smoke cigarettes and marijuana. However, sometime after arriving at the park, defendant and two others got into a fight with Andrews, accusing him of false flagging. The accomplice witness and the unindicted friend provided conflicting testimony about whether defendant was the first person to start shooting at Andrews. However, the two were consistent in their testimony that defendant and two others shot Kenneth Andrews at least 10 times, that Andrews fell to the ground, and that everyone else scattered and ran from the park.

A police officer testified that on July 16, 1998, Andrews was found dead in a clearing in the woods of Seton Falls Park. The medical examiner testified that the causes of death were injuries to the brain and liver from two gunshot wounds. One of the

potentially fatal wounds was to the back of the head from a .38 caliber bullet. The other was a shot into the abdomen from a .380 caliber bullet. In the medical examiner's opinion, either could have caused Andrews's death. She also testified that Andrews had been struck by 11 bullets. In addition to the fatal wounds, the decedent was shot in the hand, foot, thighs and buttocks. The medical examiner opined that the nature of the head wound indicated that the shooter was either standing directly behind the victim, or standing over him as he lay on the ground.

Defendant presented no evidence at trial. In summation, the defense argued that the lay witnesses had only testified against the defendant to shift blame from themselves for their involvement in the shooting. At the close of evidence, defense counsel moved for dismissal of all of the counts which the court was submitting to the jury. Those counts included: (1) intentional murder; (2) depraved indifference murder; (3) first-degree manslaughter; and (4) second-degree criminal possession of a weapon. Defense counsel argued that there was insufficient evidence to support the charges, because of inconsistencies in the witnesses' testimony. Specifically, counsel stated that the evidence did not show that defendant used and possessed a .38 caliber weapon. With respect to the murder and manslaughter charges, counsel asserted:

> "the elements that [defendant] was there have not been met. There has been conflicting testimony . . . concerning [defendant's] presence [at the park] and what he actually did there. One might say that those are factual issues that the jury should determine, but I think they go to the heart of whether, in fact, the elements of the offenses have been established and I think, for those reasons, they have not been satisfied and I move to dismiss those as well."

While defense counsel claimed that there was insufficient evidence that defendant was present at the scene of crime, he made no specific objection to the sufficiency of the evidence to support the charge of depraved indifference murder, or any claim that the evidence of intent negated that crime.

In the portion of the charge defining depraved indifference murder, the court stated: "a person is guilty of [this crime] when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person and thereby causes the death of that person." The court continued:

"Now, some of the terms used in this definition have their own special meaning in our law and I'll give you the meaning of those terms 'recklessly,' and 'depraved indifference to human life':

"First, a person acts recklessly with respect to another person's death when that person engages in conduct which creates a substantial, unjustifiable and grave risk that another person's death will occur and,

"Two, when he or she is aware of and consciously disregards that risk and also that that risk is of such a nature and degree that disregard of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

"Under our law, a crime committed recklessly is generally regarded less blameworthy than a crime committed intentionally, but when reckless conduct is engaged in under circumstances evincing a depraved indifference to human life, the law regards that conduct as so serious, so egregious, as to be the equivalent of intentional conduct.

"Conduct evincing a depraved indifference to human life is much more serious and blameworthy than conduct which is merely reckless. It is conduct which beyond being reckless, is so wanton, so deficient in moral sense and concern, so devoid of regard for the life or lives of others as to [be] equal in blameworthiness [to] intentional conduct which produces the same result.

"In determining whether a person's conduct evinced a depraved indifference to human life, a jury would have to decide whether the circumstances surrounding his or her reckless conduct, when objectively viewed, made it so uncaring, so callous, so dangerous and so inhuman as to demonstrate an attitude of total and utter disregard for the life of person or persons in danger."

The court concluded the charge for depraved indifference murder by instructing the jury that to convict on this count, it had to conclude: "that defendant, alone, or acting in concert with the co-defendants, caused the victim's death; that defendant did so by recklessly engaging in conduct which created a grave risk

of death to the victim; and that defendant engaged in such conduct under circumstances evincing a depraved indifference to human life."

The jury was instructed to consider the four submitted counts in order and in accordance with its instructions of the charged elements. The judge also specifically told the jury that upon finding the defendant guilty of any of the counts, it was to cease deliberations and report the verdict, and not to consider any of the subsequent counts.

The jury acquitted defendant of intentional murder, and convicted him of depraved indifference murder. It did not consider the counts of manslaughter in the first degree (intent to cause serious physical injury) or criminal possession of a weapon in the second degree. Defendant was sentenced to 20 years to life.

On appeal, defendant challenges the suppression court's ruling. He also claims that the evidence was legally insufficient to support his conviction, and that the verdict was against the weight of the evidence because his actions were intentional and did not support a conviction for depraved indifference murder.

I agree with the majority as to the suppression ruling. Under CPL 710.20 (6), a defendant may move to suppress identification testimony on the ground that it is tainted by "an improperly made previous identification." CPL 710.30 requires the People to notify the defendant that they intend to offer identification testimony at trial. CPL 710.60 then specifies the condition under which a hearing is required.

However, courts have carved out an exception to the notice and hearing requirements where there is evidence that the witness and the defendant are known to each other. This is because, in such circumstances, " 'suggestiveness' is not a concern" (*People v Gissendanner*, 48 NY2d 543, 552 [1979]; *accord People v Tas*, 51 NY2d 915 [1980]). " [W]hether the exception applies depends upon the extent of the prior relationship [between the witness and the defendant], which is necessarily a question of degree" (*People v Rodriguez*, 79 NY2d 445, 450 [1992]). The exception is "tantamount to a conclusion that, as a matter of law, the witness is so familiar with the defendant that there is 'little or no risk' that police suggestion could lead to a misidentification" (*id.*).

Here, after holding a hearing, the court concluded that the witness's photographic identification of the defendant was not suggestive, but merely confirmatory. The witness stated that he

had known the defendant for about a month, that he lived right next to the defendant, and that he had "hung out" with him almost every day. Thus, the witness's relationship with the defendant was neither "fleeting" nor "distant," and the court properly determined that the photographic identification was confirmatory (*see Rodriguez, supra* at 450).

Defendant's challenge to the sufficiency of the evidence to support his conviction for depraved indifference murder is not preserved (CPL 470.05 [2]; *People v Finger,* 95 NY2d 894, 895 [2000]). Defense counsel's motion for a trial order of dismissal challenged the evidence concerning defendant's presence in the park and "what he actually did there." He did not raise the claim he raises on appeal, that his conviction should be overturned because the evidence supports only a theory of intentional, not depraved indifference murder (*People v Lisojo,* 27 AD3d 215 [2006], *affd* 7 NY3d 873 [2006]; *People v Flores,* 23 AD3d 194 [2005], *lv denied* 6 NY3d 775 [2006]). Accordingly, defendant's legal sufficiency claim is unpreserved, and I agree that we should not review it in the interest of justice (*id.*).

However, defendant has requested that we conduct a weight of the evidence review of his conviction and it is my view that we have a responsibility under the law to do so (*see People v Bleakley,* 69 NY2d 490, 492 [1987]; *People v Cooper,* 88 NY2d 1056 [1996]). Weight of the evidence review "is the linchpin of our constitutional and statutory design intended to afford each litigant at least one appellate review of the facts" to determine, in a criminal case, whether the People have proven their case at trial (*Bleakley,* 69 NY2d at 494). It is our responsibility to "weigh the evidence in light of the elements of the crime as charged without objection by defendant" (*People v Noble,* 86 NY2d 814, 815 [1995]) to determine whether the trial evidence supports all of the elements of the conviction or count at issue (*see People v Cahill,* 2 NY3d at 62 [2003] [Court of Appeals reviewed trial testimony against elements of witness elimination murder (Penal Law § 125.27 [1] [a] [v]) and determined that conviction of this crime was against the weight of the evidence]).

I believe that we must consider " 'the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from [such] testimony' " (*Bleakley,* 69 NY2d at 495, quoting *People ex rel. MacCracken v Miller,* 291 NY 55, 62 [1943]). "When an appellate court performs weight of the evidence review, it sits, in effect, as a 'thirteenth

juror' (*Tibbs v Florida*, 457 US 31, 42 [1982])" (*People v Cahill*, 2 NY3d at 58). If the trier of fact has not given the evidence the weight it should be accorded, we must set aside the verdict pursuant to CPL 470.20 (5) (*see People v Conway*, 6 NY3d 869,870 [2006] [upon rejection of the defendant's legal insufficiency claim, the case was remitted to this Court for "consideration of the facts" pursuant to CPL 470.25 (2) (d) and 470.40 (2) (b)]).

In my view, the majority's position, limiting weight of the evidence review to the arguments raised by defendant in his brief, is unduly narrow. This would result simply in a reweighing of the testimony on credibility alone. The majority would look only at the minor inconsistencies in the testimony raised by defendant, and ignore that at the time of defendant's trial, the crime of depraved indifference murder included a mens rea of recklessness, and its proof required a showing that the circumstances surrounding the crime, when viewed objectively, showed a depraved indifference to human life (*People v Register*, 60 NY2d 270 [1983], *cert denied* 466 US 953 [1984], *overruled* by *People v Feingold*, 7 NY3d 288 [2006]).

Our obligation is to assess whether all of the evidence, evaluated against the charge, supports the conviction. In this case, the court's charge on depraved indifference murder was consistent with the *Register* rule. Moreover, under *Register*, "it [was not] permissible . . . for a jury to convict a defendant of depraved indifference murder 'where the evidence produced at trial indicated that if the defendant committed the homicide at all, he committed it with the conscious objective of killing the victim' " (*Policano v Herbert*, 7 NY3d 588, 600 [2006]).

In *Policano*, the Court of Appeals characterized *People v Sanchez* (98 NY2d 373 [2002]) as the "epitom[e of its] depraved indifference jurisprudence under the *Register* regime" (*Policano, supra* at 599). A comparison of the facts of *Sanchez* and those presented here is instructive.

In *Sanchez*, the defendant and the decedent were the boyfriends of two sisters. The two had an argument at a family party, and the decedent asked the defendant to go outside with him. The defendant went though a door, then turned around and shot the victim once, from a distance of no more than 12 to 18 inches, killing him (*id*. at 376). Upon legal sufficiency review, the Court of Appeals found that the evidence supported the defendant's conviction for depraved indifference murder. The following excerpt from *Sanchez* is notable:

"[a]lthough the gun was discharged at point-blank

range, the bullet only struck [the victim] in his upper left chest. . . . The jury may also have taken into account the preexisting good relations between defendant and [the victim], and concluded that this was an instantaneous, impulsive shooting—perhaps to disable or frighten [the victim], rather than to kill him. *Thus, a jury could reasonably have found that defendant's homicidal level of mental culpability was reckless rather than intentional.*" (*Id.* at 377-378 [emphasis supplied].)

The facts here are in sharp contrast to *Sanchez*. There is simply no view of the trial record which could support the objective conclusion that defendant's "homicidal level of mental culpability" was recklessness. This was not a spontaneous encounter, and there was nothing impulsive about defendant's actions. This was a calculated murder. Defendant and the other participants from his gang planned on July 13, 1998 to take Kenneth Andrews to Seton Falls Park on the night of July 14, 1998 to kill Andrews for false flagging. The group agreed on the location for the killing, they brought Andrews to that location on the designated night, and they discharged more than 11 bullets at him from close range. The ballistics expert testified that shots were fired even after Andrews fell to the ground, and that more than one of the wounds was fatal.

It is my position that, when the evidence is measured against the court's charge on the elements of depraved indifference murder, no inference could fairly be drawn that defendant and the other gang members were merely indifferent to Andrews's plight. Thus, defendant's conviction of depraved indifference murder must be reversed as against the weight of the evidence (*People v Bleakley, supra; People v Cooper, supra*).

My conclusions are not based upon the Court of Appeals' reformulation of its view of "depraved indifference," as articulated in *People v Feingold* (7 NY3d 288, 294 [2006]). Instead, they are based upon review of the permissible inferences to be drawn from the trial evidence as viewed against the elements of depraved indifference murder as charged to the jury in 2001, when this trial took place.

In *Feingold*, decided in July 2006, the Court of Appeals explicitly overruled its prior holdings in *People v Register* (*supra*) and *People v Sanchez* (*supra*). *Register* and *Sanchez* had held that depraved indifference, as applied to the crimes of murder, assault, and reckless endangerment, was neither a culpable

mental state nor a specific set of actions. As discussed, those cases held that depraved indifference murder included a mens rea of recklessness, and that the crime's proof entailed a showing that the circumstances surrounding the crime, when objectively viewed, evinced depraved indifference to human life.

In *Feingold*, by contrast, the defendant was convicted of reckless endangerment in the first degree, a crime which contains identical language regarding "depraved indifference" as the depraved indifference murder statute (7 NY3d at 290). That defendant attempted to commit suicide by taping the door of his apartment, blowing out the pilot light on his stove, and turning on the gas (*id.*). However, a spark in the apartment caused an explosion. No one, including the defendant, was seriously injured, but there was substantial damage to the defendant's and the neighboring apartments. The Court of Appeals reduced the defendant's conviction from first- to second-degree reckless endangerment, holding, for the first time that "depraved indifference to human life is a culpable mental state" (*id.* at 296 [internal quotation marks omitted]). Because the defendant in *Feingold* intended to kill himself, the Court of Appeals held that he did not have the requisite mens rea of depraved indifference for the charged crime.

While weight of the evidence review is based upon the application of the evidence to the elements of the crime as charged to the jury at the time of trial, my conclusion that defendant was not guilty of depraved indifference murder is consistent with Court of Appeals precedent, as it has evolved. In *People v Suarez* (6 NY3d 202 [2005]) the Court of Appeals defined depraved indifference as utter disregard and indifference as to "whether the life of any particular person was lost or not" (*id.* at 210). The Court also instructed that "depraved indifference" murder is rare in a one-on-one encounter resulting in the death of a victim (*id.* at 211). The Court provided two examples of facts which would make out this crime:

> (1) "when the defendant intends neither to seriously injure, nor to kill, but nevertheless abandons a helpless and vulnerable victim in circumstances where the victim is highly likely to die, the defendant's utter callousness to the victim's mortal plight—arising from a situation created by the defendant—properly establishes depraved indifference murder" (*id.* at 212);

> (2) "when a defendant—acting with a conscious

objective not to kill but to harm—engages in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim" (*id.*).

The *Suarez* Court also noted that most depraved indifference single-individual murder cases involve "wanton cruelty, brutality or callousness directed against a particularly vulnerable victim, combined with utter indifference to the life or safety of the helpless target of the perpetrator's inexcusable acts" (*id.* at 213). It concluded that "[w]here comparable facts are not shown . . . a jury is foreclosed, as a matter of law, from considering a depraved indifference murder charge whenever death is the result of a one-on-one confrontation" (*id.*).

Given my determination that the instant depraved indifference murder conviction was against the weight of the evidence, the question arises whether defendant may be tried on the remaining counts which had been submitted to the jury, but which it did not consider. These were manslaughter in the first degree and criminal possession of a weapon in the second degree. If double jeopardy is implicated, defendant may not be tried again. The protection against double jeopardy is found in the Fifth Amendment to the United States Constitution. It provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb" (US Const 5th Amend). The United States Supreme Court has interpreted the clause to preclude three types of governmental actions: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense (*North Carolina v Pearce*, 395 US 711, 717 [1969]; *see Benton v Maryland*, 395 US 784 [1969] [Due Process Clause of Fourteenth Amendment provides that double jeopardy protections of Federal Constitution apply to the states]).

Further, article I, § 6 of the New York State Constitution provides, "[n]o person shall be subject to be twice put in jeopardy for the same offense." Article 40 of the Criminal Procedure Law codifies New York's statutory double jeopardy proscriptions, stating that "[a] person may not be twice prosecuted for the same offense" (CPL 40.20 [1]). CPL 40.30 defines the term "[p]revious prosecution." It provides:

"1. Except as otherwise provided in this section, a person 'is prosecuted' for an offense, within the meaning of section 40.20, when he is charged there-

with by an accusatory instrument filed in a court of this state or of any jurisdiction within the United States, and when the action either:

"(a) Terminates in a conviction upon a plea of guilty; or

"(b) Proceeds to the trial stage and a jury has been impaneled and sworn or, in the case of a trial by the court without a jury, a witness is sworn . . . .

"3. Despite the occurrence of proceedings specified in subdivision one, *if such proceedings are subsequently nullified by a court order which restores the action to its pre-pleading status or which directs a new trial of the same accusatory instrument, the nullified proceedings do not bar further prosecution of such offense under the same accusatory instrument*" (emphasis supplied).

The jury's acquittal of intentional murder here did not constitute an acquittal of intentional manslaughter (*see* CPL 300.50 [4]). Because of a trial error in the submission of two inconsistent theories of murder, the jury was prevented from considering a number of counts in defendant's original indictment. Accordingly, a second trial on the counts at issue would not impermissibly place defendant in jeopardy for the same crime twice.

No double jeopardy issues would be implicated by retrying defendant on the charge of second-degree possession of a weapon. That offense was not a lesser included offense of either of the murder counts considered by the jury (*see People v Charles*, 78 NY2d 1044, 1047 [1991] [where court instructed jury not to consider additional counts upon finding the defendant guilty of the first count submitted, retrial was not precluded by double jeopardy principles]; *see also People v Turner*, 126 AD2d 488, 489 [1987]).

I would conclude that in the particular facts presented, defendant may also be tried on the charge of manslaughter in the first degree, a lesser included offense of intentional murder. I agree with the result reached by the majority in *People v Suarez* (40 AD3d 143 [2007, decided herewith]).

The jurors considered two inconsistent theories of murder, intentional and depraved indifference. They acquitted defendant of intentional murder and convicted him of depraved indifference murder. In making their determinations in the order

that they did, the jurors were following the Criminal Procedure Law and the court's instructions that they render a verdict on greater crimes before considering lesser included ones (CPL 300.50; *People v Boettcher*, 69 NY2d 174 [1987]). Thus, while the jury acquitted defendant of intentional murder, it had no opportunity to deliberate on manslaughter in the first degree.

This situation, where the jury was not given an opportunity to consider the lesser included offense, is analogous to that of a jury unable to reach a verdict on a lesser included offense. Thus retrial on manslaughter in the first degree, a count which was part of the original indictment and was submitted, but not considered by the jury, would not impermissibly place defendant in jeopardy twice for the same offense (*see People v Green*, 96 NY2d 195 [2001] [double jeopardy does not bar retrial on lesser included offenses submitted to jury in original trial in which it failed to reach a verdict]; *see also People v Quamina*, 236 AD2d 426 [1997] [acquittal on second-degree weapon possession counts did not foreclose retrial on third-degree possession counts on which jury was unable to reach a verdict]).

*People v Biggs* (1 NY3d 225 [2003]) does not require a different result. In *Biggs*, the court dismissed the intentional murder count because the evidence was insufficient. The jury was instructed on depraved indifference murder and reckless manslaughter. It acquitted on depraved indifference murder and deadlocked on reckless manslaughter, an unindicted lesser included offense of both intentional and depraved indifference murder. In a later proceeding, the prosecutor attempted to obtain a new indictment for intentional manslaughter. The Court of Appeals found that the "subsequent indictment and prosecution" on this new offense was precluded by principles of double jeopardy (*Biggs*, 1 NY3d at 231).

Here, in contrast to *Biggs*, the initial prosecution included a count of first-degree manslaughter. However, because of the instructions as to the order of deliberations, the jury never had an opportunity to consider whether defendant was guilty of this crime. Had the inconsistent theory of depraved indifference murder not been charged, the jury could have reached the manslaughter count.

Accordingly, as the People seek only to restore defendant to the position he would have been in had depraved indifference murder not been charged in the original indictment, I would reverse the judgment appealed and remand for a retrial on the counts of first-degree manslaughter and second-degree criminal possession of a weapon.

FRIEDMAN, NARDELLI and CATTERSON, JJ., concur with GONZA-LEZ, J.; MAZZARELLI, J.P., dissents in a separate opinion.

Judgment, Supreme Court, Bronx County, rendered January 2, 2002, affirmed.