■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROHAN BROWN, Appellant. [839 NYS2d 457]—

Judgment, Supreme Court, Bronx County (Ira Globerman, J.), rendered December 17, 2003, convicting defendant, after a jury trial, of murder in the second degree (depraved indifference), and sentencing him to a term of 18 years to life, unanimously modified, on the law, to the extent of vacating the DNA databank fee, and otherwise affirmed.

The People's main witness, a 35-year-old drug abuser with numerous convictions who, on the night in question had consumed four or five Long Island Iced Teas and had smoked several "blunts" containing marijuana mixed with cocaine, saw a group of men, four of whom he knew, including defendant, arguing with Joseph Bauer. The witness then saw Bauer run away and heard yelling and the sound of a bottle or two breaking as the group of men chased after him. When Bauer lost his balance and fell on the traffic island in the middle of the street,

the group of men beat and kicked him while he was on the ground. The area was "pretty well lit," and the witness could see the attackers' faces. The witness watched defendant step back, pull out a folding knife and stab the victim, who was "laying on his back," a couple of times. As he watched, the witness noticed two Transit Authority police officers on an elevated subway platform observing him and the street below. Bauer stood up and staggered toward a taxi stand, where he was turned away by the night manager, and finally collapsed down the street near a liquor store. The witness could see spots of blood coming through Bauer's white T-shirt. The two officers then came down from the platform, and one of them took a statement from the witness, while the other spoke to Bauer. Bauer stated that he had come to the area to buy a "nickel bag" and was "jumped" by five or six black males in their late teens, who then fled.

Bauer lost consciousness, and after being taken to the hospital, died during the night. An autopsy revealed that he was stabbed twice in the abdomen and twice in the back and that his injuries were consistent with being beaten and repeatedly stabbed. Defendant was arrested four years later in Louisville, Kentucky.

The transit officers, who did not see Bauer until he left the taxi stand and staggered towards them, testified that Bauer was shirtless and covered in blood, and smelled strongly of alcohol. A detective later found Bauer's bloody T-shirt in front of the taxi stand, which had blood in and around it. No knife was ever recovered and no fingerprints were found.

After the close of evidence, the court submitted four crimes to the jury—murder in the second degree, both intentional and depraved indifference, manslaughter in the first degree and gang assault in the second degree. Defendant was convicted of depraved indifference murder and acquitted of intentional murder.

On appeal, defendant claims that the trial court erred in charging depraved indifference murder when the evidence showed what could only be classified as an intentional act. However, while couched in terms of weight of the evidence, this claim is actually one of legal sufficiency (*see People v Pasley*, 38 AD3d 427, 428 [2007], *lv granted* 2007 NY Slip Op 68679[U] [2007]), which, since defendant made only a general motion for a trial order of dismissal, is unpreserved for our review (CPL 470.05 [2]) and we decline to review it in the interest of justice (*see id.*; *People v Danielson*, 40 AD3d 174, 176 [1st Dept 2007]; *see also People v Gibbons*, 15 AD3d 196 [2005], *lv denied* 4 NY3d

886 [2005]). Further, by not objecting to the court's submission of the depraved indifference murder charge before jury deliberation, defendant waived any claims of error with respect thereto.

Any weight of the evidence analysis, which we are obliged to conduct (*People v Bleakley*, 69 NY2d 490, 495 [1987]), must be made " 'in light of the elements of the crime as charged without objection by defendant' " (*Danielson* at 176, quoting *People v Noble*, 86 NY2d 814, 815 [1995]; *see also People v Patterson*, 38 AD3d 431, 432 [2007]). Stated differently, given defendant's failure to object, our weight-of-the-evidence review must be guided solely by the governing precedent concerning the elements of depraved indifference murder as they were charged to the jury in November 2003. Thus, defendant's reliance on post-2003 cases (*e.g. People v Payne*, 3 NY3d 266 [2004]; *People v Feingold*, 7 NY3d 288 [2006]) is misplaced. The change in the law regarding depraved indifference murder cannot be retroactively applied (*Policano v Herbert*, 7 NY3d 588, 603-604 [2006]). In assessing the weight of the evidence in accordance with *People v Register* (60 NY2d 270 [1983], *cert denied* 466 US 953 [1984], *overruled by People v Feingold, supra*) and *People v Sanchez* (98 NY2d 373 [2002]), the governing precedents concerning the elements of depraved indifference murder at the time of trial, we find that the verdict was not against the weight of the evidence.

Here, the jury reasonably could have concluded, after hearing testimony that defendant and his cohorts chased a drunken and drugged victim, threw bottles at him until he fell, then beat him while he was apparently defenseless until defendant pulled out a knife and stabbed him four times, that defendant got caught up in the frenzy of the gang assault or acted to impress his friends. Moreover, in presumably following the court's instructions, the jury could have possibly viewed this murder as so cold-blooded and brutal that it merited stigmatization as depraved. Analyzed against *Register* and the instructions to the jury regarding the elements of depraved indifference murder, to which defendant made no objection, the jury could find defendant guilty of depraved indifference (*cf. People v Parrella*, 4 AD3d 132 [2004], *lv denied* 2 NY3d 804 [2004]; *People v Martin*, 8 AD3d 883 [2004], *lv denied* 3 NY3d 677 [2004]). Moreover, given the recent enactment of gang assault statutes on the heels of the Legislature's recognition that gang assaults "are particularly harrowing crimes" and that "the joint action of numerous assailants is not only terrifying to victims but tends to increase the likelihood that severe or lethal injuries will be inflicted" (Senate Mem in Support of L 1996, ch 647, 1996 McKinney's Session Laws of NY, at 2581-2582), there is ample rec-

ord support for the jury's finding that defendant's action evinced a depraved indifference to human life.

Even under the current standards enunciated in *People v Suarez* (6 NY3d 202 [2005]), this case passes muster. In *Suarez*, the Court of Appeals addressed the issue in the context of two cases involving one-on-one killings and identified two recurring fact patterns: (1) when the defendant intends neither to seriously injure, nor to kill, but nevertheless abandons a helpless and vulnerable victim in circumstances where the victim is highly likely to die; and (2) when a defendant—acting with a conscious objective not to kill but to harm—engages in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim (*id.* at 212). Given that the stabbing occurred during a gang assault, this case fits within *Suarez*'s second fact pattern.

Defendant's secondary argument that counsel's failure, among other things, to object to the depraved indifference count constituted ineffective assistance of counsel involves a matter outside the record concerning counsel's strategy and is unreviewable on direct appeal (*Pasley*, 38 AD3d at 428). In view of counsel's success in securing defendant's acquittal on the intentional second-degree murder count, to the extent the existing record permits review, defendant received effective assistance of counsel (*id.*).

The second of defendant's weight-of-the-evidence claims, that the testimony of the People's sole witness was patently incredible because he was a career criminal, was drunk or high at the time of the incident and his testimony conflicted with other evidence, while appropriate for weight-of-the-evidence review, is nonetheless unpersuasive. The testimony of a People's witness is not automatically rendered unreliable because he has an "unsavory and criminal background" (*People v Harris*, 276 AD2d 562, 562 [2000], *lv denied* 95 NY2d 935 [2000]) or is a drug abuser (*People v Streeter*, 169 AD2d 636, 637 [1991], *lv denied* 77 NY2d 967 [1991]). Here, the jury convicted defendant on the basis of the witness's identification of defendant as the person who stabbed the victim. The jury, who was made aware of the witness's character flaws and the discrepancies in his testimony, still found him credible (*see People v Rodriguez*, 249 AD2d 169 [1998], *lv denied* 92 NY2d 930 [1998]). Further, despite minor inconsistencies that are understandable in light of the five-year period between the incident and trial, the police and medical testimony largely corroborated the People's witness.

As the People concede, since the crime was committed prior

to the effective date of the legislation (Penal Law § 60.35 [1] [a] [v] [former (1) (e)]) providing for the imposition of a DNA databank fee, that fee should not have been imposed.

Defendant's claim that evidence was admitted in violation of the hearsay rule and Confrontation Clause is unpreserved and we decline to review it in the interest of justice. Were we to review this claim, we would find it to be without merit. Defendant's ineffective assistance argument relating to this issue is also without merit. Concur—Tom, J.P., Gonzalez, Sweeny, Catterson and Malone, JJ.