[841 NYS2d 55]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SAMUEL ACEVEDO, Appellant.

First Department, August 16, 2007

APPEARANCES OF COUNSEL

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Peter Theis* of counsel), for appellant.

*Robert M. Morgenthau, District Attorney*, New York City (*Susan Gliner* and *Mark Dwyer* of counsel), for respondent.

## OPINION OF THE COURT

CATTERSON, J.

The defendant was charged with two counts of second-degree (intentional and depraved indifference) murder in the bludgeoning death of Stacy Freund, an acquaintance for whom he had bought heroin just before her death on April 1, 2001. Police found Freund in her West 137th Street apartment lying face down on a mattress soaked in blood. A lead directed detectives to the defendant whom they located after his arrest on a parole

violation, and who agreed to talk to the detectives when they told him he was not a suspect in the murder at that time.

In a first oral statement, the defendant said that he had visited the victim on the way to the wake of a friend, but then left the victim's apartment. In a second statement, made after he asked to make changes, he added that he had offered to make a buy of heroin for the victim, attempted to do so unsuccessfully, returned to her apartment and then left.

The defendant then received *Miranda* warnings and stated he understood them. He gave a third statement. He had visited the victim and found her suffering from withdrawal. He went out to obtain heroin for her. He obtained two bags, but consumed one of them on the way back. Discovering this, the victim became furious. The fight became physical. When he pushed her and tried to leave, she produced a "mini-hammer," hit the defendant in the chest and tried to hit him in the face. He got the mini-hammer away from her, and he "swung away" with it "several times at her face and head." He "blacked out" and did not remember what he had done. He had not realized what he was doing at the time. When he realized what had happened and could not revive the unconscious victim, he fled. He had done the deed "with no intentions to take her life—just to back her off and stop her from harming" him.

At trial, the medical examiner testified that the victim's head was covered with blunt-instrument wounds, mostly lacerations but also abrasions and contusions, the largest being on the forehead. There was extensive fracturing and hemorrhaging below the skin and in the brain. There were also wounds on her neck and chest. The right-side skull injuries were severe, and some parts of the skull merely fell apart when exposed. The medical examiner found that most of the injuries had been inflicted with at least 12 blows from a blunt instrument, consistent with a hammer. Testimony from a friend of the victim's established that, on the day of her death, when she failed to turn up for a meeting, he called and she told him that a friend named "Sammy" was at her apartment. Testimony from the police detectives included the defendant's accounts of what had happened between himself and the victim, and his statement that he did not intend to kill the victim.

In summation, the People argued that the defendant had intended to kill the victim. The prosecutor told the jury: "[t]welve times his arm came around and he slammed that hammer into her head. You don't do that folks to your friend if you

don't mean it." At the close of the People's case, the defendant moved for intentional (first-degree) and reckless (second-degree) manslaughter charges to be submitted to the jury. The judge refused to submit the second-degree manslaughter charge. Subsequently, the jury acquitted the defendant of intentional murder but found him guilty of depraved indifference murder. The defendant was sentenced as a second felony offender to 25 years to life.

On appeal, the defendant argues that he was in custody when he made pre-*Miranda*-warning statements, requiring suppression of his post-*Miranda* confession. As a preliminary matter, we find this argument to be without merit. The suppression court properly found that the defendant did not make the statements as a result of custodial interrogation. He was in an interview room, not a cell; the questioning was investigatory rather than accusatory; he was offered food, refreshment and was not forbidden to leave. (*See People v Machicote*, 23 AD3d 264 [2005], *lv denied* 6 NY3d 777 [2006].)

Also without merit is the defendant's assertion of error in the trial court's seating of the third alternate juror rather than the first expressly because the third was Hispanic. The record is clear that the defendant agreed to the juror substitution which was initiated at his behest and on his behalf. Thus, we find that he waived his claim under CPL 270.35 (1).

■■ The defendant further argues that the depraved indifference murder conviction was not proved by sufficient evidence and is against the weight of the evidence since the evidence supported only intentional not reckless homicide. Conceding that his trial counsel did not preserve the legal sufficiency issue, he argues that the failure to make a specific dismissal motion constituted ineffective assistance of counsel.

The most recent Court of Appeals clarifications of the depraved indifference murder statute have resulted in a surge of incarcerated defendants eager to "confess" to intentional homicide as a way of having their convictions for depraved indifference murder reversed while secure in the knowledge that the Double Jeopardy Clauses of the Federal and State Constitutions bar their retrial for intentional murder. (*See People v Danielson*, 40 AD3d 174 [2007, Gonzalez, J.].) In *Danielson*, this Court rejected the defendant's legal insufficiency of evidence claim as unpreserved. Additionally, we denied the defendant's request for appellate review of the issue in the interest of justice on the grounds that "defendant's argument for appellate reversal rests

on the unseemly assertion that he is entitled to relief because he intentionally murdered the victim, rather than having recklessly caused his death." (*Danielson*, 40 AD3d at 175.)

In the instant case, the defendant similarly asserts that the evidence at trial was insufficient for conviction of depraved indifference murder since the circumstances suggest "one, and only one, state of mind: intent to kill." The defendant argues that his beating the victim to death with a hammer must have been intentional, and therefore could not be *"reckless* conduct" as required under the depraved indifference murder statute. His claim is similarly unpreserved because his dismissal motion at the close of the People's case was not specifically directed at the alleged legal insufficiency of the evidence. (*People v Gray*, 86 NY2d 10 [1995]; *see e.g. People v Fernandez*, 23 AD3d 252 [2005].) The defendant concedes his claim is unpreserved but argues nevertheless that we should review it in the interest of justice, a request which, as in *Danielson,* we reject as "unseemly" but which rejection does not allow us to evade the review entirely. In this case, the defendant additionally argues that trial counsel's failure to make the specific dismissal motion constitutes ineffective assistance of counsel.

While the People assert that such claim is unreviewable except where raised by a CPL 440.10 motion, it is well-settled that an ineffective assistance of counsel claim may be raised also on direct appeal. (*People v Lane*, 60 NY2d 748 [1983]; *see also People v Lewis*, 2 NY3d 224, 229 n 2 [2004] [where failure to object is the basis for a claim of ineffective assistance of counsel that claim by its very nature will ordinarily be made for the first time on appeal].)

In order to prevail on an ineffective assistance of counsel claim, a defendant, under either federal or state standards, must overcome the presumption of counsel's competence. (*People v Rivera*, 71 NY2d 705, 708-709 [1988]; *accord Strickland v Washington,* 466 US 668, 689 [1984].) New York's standard for the constitutionally guaranteed right to effective assistance of counsel has long been whether the defendant was afforded "meaningful representation." (*People v Benevento*, 91 NY2d 708, 712 [1998]; *People v Baldi*, 54 NY2d 137, 147 [1981].) Meaningful representation is assessed in the light of the law and the facts of the case, viewed in their totality at the time of the trial. (*Id.*) Moreover, in order to prevail, the defendant must show that counsel's failure seriously compromised his right to a fair trial. (*People v Benevento*, 91 NY2d at 713.)

Under the federal standard, a defendant must demonstrate that his attorney's performance failed to meet an objective standard of reasonableness and that, but for counsel's error, a reasonable probability exists that the result of the proceeding would have been different. (*Strickland*, 466 US at 688-694.)

Specifically, the defendant argues that he received ineffective assistance under both standards because trial counsel failed to make a sufficiently detailed motion for a trial order of dismissal of the depraved indifference count. The defendant asserts that, based on the People's proof, a rational juror could find only that the defendant had acted intentionally, not recklessly. Therefore, he claims, the motion for a trial order of dismissal would have been meritorious in that the depraved indifference murder count would have been dismissed. Additionally, the defendant asserts that his right to a fair trial was compromised, and that the defendant was egregiously prejudiced because in failing to make the motion, trial counsel failed to preserve the issue of legal sufficiency for appellate review.

The defendant's assertions are without merit. First, to posit that the depraved indifference murder count would have been dismissed, and consequently that the defendant would not have been convicted of either second-degree murder count (since the jury acquitted the defendant of the intentional murder count) is looking back through rose-colored spectacles, or stated differently is impermissible hindsight. (*Benevento*, 91 NY2d at 712.) There is no basis whatsoever for asserting that a "reasonable probability" existed that the court would have dismissed the count. On the contrary, the Court of Appeals has acknowledged that, until it overruled its holdings in *People v Sanchez* (98 NY2d 373 [2002]) and *People v Register* (60 NY2d 270 [1983], *cert denied* 466 US 953 [1984]), both second-degree (intentional and reckless) murder counts were submitted to the jury "for it to sort out the defendant's state of mind." (*See Policano v Herbert*, 7 NY3d 588, 601 [2006].)

On the other hand, the defendant correctly observes that a motion to dismiss specifically alleging legal insufficiency would have preserved the issue for appellate review. Deprivation of appellate review, however, does not per se establish ineffective assistance of counsel. Were that the case, then in countless appeals where we have determined that an issue was not preserved for appellate review, the defendants would have prima facie grounds for claiming ineffective assistance. Such is not the case.

Rather, the defendant's assertion that he is seriously prejudiced by this omission is predicated on the apparent assumption

that his claim would be found meritorious upon appellate review. Evidently, the defendant is confident that our review would lead to a reversal of the depraved indifference murder conviction, and remand for a new trial on the only remaining submitted, but not considered, charge; that of intentional manslaughter. (*See People v Suarez*, 40 AD3d 143 [2007].) Such a result, however, is by no means a foregone conclusion.

The defendant's claim that his conviction is against the weight of the evidence need not be preserved and is therefore properly before this Court. (*See People v Rivera*, 222 AD2d 317, 319 [1995].) Our obligation here is to weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from such testimony. (*People v Bleakley*, 69 NY2d 490, 495 [1987].) In that way, we can determine whether the evidence supports all of the elements of the conviction or count at issue. (*People v Cahill*, 2 NY3d 14, 62 [2003].) But the evidence must be weighed "in light of the elements of the crime as charged without objection by defendant." (*People v Noble*, 86 NY2d 814, 815 [1995].)

Our review then is conducted according to the elements of the depraved indifference murder statute as they were charged to the jury at this trial which occurred prior to Court of Appeals rulings in *People v Payne* (3 NY3d 266 [2004]), *People v Suarez* (6 NY3d 202 [2005]) and *People v Feingold* (7 NY3d 288 [2006]). We must look at the evidence in light of the court's charge on depraved indifference murder consistent with the *Register* rule (60 NY2d at 277-278). Indisputably, at the time of the defendant's trial, the crime of depraved indifference murder included a mens rea of recklessness and a jury could not convict for depraved indifference murder where the evidence "indicated that if the defendant committed the homicide at all, he committed it with the conscious objective of killing the victim." (*See Policano*, 7 NY3d at 600.)

However, in this case, we find that a rational trier of fact could draw the inference that the defendant did not intend to kill the victim. The jury was entitled to give the defendant the benefit of the doubt given that his numerous statements all supported the contention that he did not intend to kill the victim. Moreover, the jury's verdict was rational when the defendant's statements are taken together with evidence that established that there was no animosity between the defendant and victim until moments before the killing, as well as the fact that the hammer was not a weapon per se like a shotgun or a

knife intentionally brought to the scene for the purpose of inflicting injury but was a household tool which the victim grabbed and used first on the defendant without apparent injury to him. Consequently, we find no reason to overturn the jury's determination or set aside the verdict on the basis of our weight of evidence review.

Accordingly, the judgment of the Supreme Court, New York County (Laura Visitación-Lewis, J., at hearing; Gregory Carro, J., at trial and sentence), rendered April 15, 2003, convicting defendant, after a jury trial, of murder in the second degree, and sentencing him, as a second felony offender, to a term of 25 years to life in prison, should be affirmed.

TOM, J.P., FRIEDMAN, SULLIVAN and MALONE, JJ., concur.

Judgment, Supreme Court, New York County, rendered April 15, 2003, affirmed.