■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SHAHKENE JOSEPH, Appellant. [893 NYS2d 306]—

McCarthy, J.

In a written statement given to police, defendant described how he and his codefendant, Lamar Reid, attempted to rob an apartment in the City of Albany, which resulted in the death of a man visiting the apartment. Reid kicked open the front door to the apartment house, but the victim was behind the door and pushed it closed, whereupon Reid and defendant fired several shots through the door before fleeing. Defendant was indicted and tried on two counts of murder in the second degree—intentional murder and depraved indifference murder. Defendant testified at trial to disavow his written statement and other evidence he provided to police and denied being present at or involved in the crime. Nevertheless, he was convicted on the depraved indifference murder charge.* We affirm.

Defendant properly preserved his contention that the People presented legally insufficient evidence to convict on the depraved indifference murder count by specifically raising the issue of the required culpable mental state in his trial and post-trial motions to dismiss. "A verdict is legally sufficient when, viewing the facts in a light most favorable to the People, there

---

* Reid was tried separately and convicted of murder in the second degree (intentional murder).

is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (*People v Danielson*, 9 NY3d 342, 349 [2007] [internal quotation marks and citations omitted]). Initially, we note that legally sufficient evidence of defendant's participation in this homicide was presented in the form of documents that defendant provided to police, including his signed statement, the photograph he marked to show where he and Reid stood when they fired their weapons, and the apology letter he wrote to the victim's family. Details of defendant's statement were corroborated by ballistic evidence and eyewitness testimony. The principal issue then is defendant's culpable mental state at the time the murder was committed.

A conviction for depraved indifference murder requires proof that "[u]nder circumstances evincing a depraved indifference to human life, [a person] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person" (Penal Law § 125.25 [2]; *see People v Baptiste*, 306 AD2d 562, 564 [2003], *lv denied* 1 NY3d 594 [2004]). The necessary culpable mental state requires both recklessness and depraved indifference (*see People v Feingold*, 7 NY3d 288, 294 [2006]; *People v Stewart*, 36 AD3d 1156, 1158 [2007], *lv denied* 8 NY3d 991 [2007]). "A person acts recklessly . . . when he [or she] is aware of and consciously disregards a substantial and unjustifiable risk" (Penal Law § 15.05 [3]; *see People v Hartman*, 4 AD3d 22, 24 [2004]). The Court of Appeals has explained that "depraved indifference is best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (*People v Suarez*, 6 NY3d 202, 214 [2005]; *accord People v Feingold*, 7 NY3d at 296, 298 [Ciparick, J., dissenting]). "The mens rea of depraved indifference to human life can, like any other mens rea, be proved by circumstantial evidence" (*People v Feingold*, 7 NY3d at 296).

In his written statement to police, defendant admitted that he had only intended to rob the apartment—which was a known location for selling marihuana. Defendant's statement indicated that Reid kicked open the front door and he and Reid saw the victim standing in the doorway before the victim pushed the door closed. Although the victim happened to have a pellet gun, there was no evidence that either defendant or Reid saw it. The eyewitness inside the apartment testified that the victim had just started to open the door when he cried out in surprise and closed the door before the shots were fired. The victim was

struck by a round from Reid's weapon and spread shot from defendant's shotgun; he bled to death. The eyewitness testified that shortly before the shooting, defendant had visited the apartment to buy marihuana, but was otherwise unknown to him. There was no evidence that defendant knew the victim or had any premeditated intention to injure or kill the victim. A rational jury could therefore find that defendant, acting without a conscious objective to kill, but with a wanton disregard for a grave risk of death (see *People v Feingold*, 7 NY3d at 293), shot blindly through the door, resulting in the victim's death.

The weight of the credible evidence admitted at trial also supports defendant's conviction. Certainly, " 'based on all the credible evidence[,] a different finding would not have been unreasonable' " (*People v Romero*, 7 NY3d 633, 643 [2006], quoting *People v Bleakley*, 69 NY2d 490, 495 [1987]). Notably, Reid was tried separately and convicted of intentional murder. In this case, a rational jury could have reasonably inferred that, in the instant that Reid and defendant's access to the apartment was blocked when the victim closed the door, a conscious objective to harm or kill him was formed. In our view, however, the evidence presented is more consistent with the conclusion that no conscious objective to harm anyone was present, and that defendant fired at the door in callous frustration, spite or surprise in response to the door being closed in his face, yet with utter disregard for the victim or, indeed, anyone else that might have been behind that closed door. Defendant fled immediately, without robbing the apartment, and no evidence was presented that they entered the building or saw the victim after shooting at the door, further evincing a complete lack of concern over whether their shots hit anyone.

Defendant next claims that it was error to submit both intentional murder and depraved indifference murder for the jury's consideration. To be sure, the circumstances in which both charges may be considered are narrow (see *People v Suarez*, 6 NY3d at 211-216). However, while there is no question that firing through the door where the victim stood a moment before created a grave danger that the victim would be injured or killed, as noted above, the circumstances here presented a close question of fact for the jury regarding defendant's state of mind at the moment he fired his weapon. It is clear that under the circumstances, if no intent to kill the victim was formed, defendant's conduct "[r]eflect[ed] wickedness, evil or inhumanity, as manifested by brutal, heinous and despicable acts" and his conduct was "so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so

blameworthy as to render [defendant] as culpable as one whose conscious objective is to kill" (*People v Suarez*, 6 NY3d at 214 [internal quotation marks and citation omitted]).

Turning to defendant's claim of prosecutorial misconduct, in our view, the record as a whole does not support defendant's claim that he was denied a fair trial (*see People v Diotte*, 63 AD3d 1281, 1282 [2009]; *People v Dickson*, 58 AD3d 1016, 1018 [2009], *lv denied* 12 NY3d 852 [2009]). Initially, we note that defendant failed to preserve for our review, by specific objection at trial, any objection to (1) testimony indicating that defendant was incarcerated when police interviewed him, (2) admission of a portion of defendant's prior testimony, (3) references to plea negotiation, or (4) statements in the prosecutor's summation addressing the inconsistency between defendant's testimony and that of other witnesses. Were we to consider these objections, under the circumstances presented, we would find them to be either without merit or, at most, harmless error. As to statements made during the prosecutor's summation to which defendant preserved an objection, we also find that any prejudice was de minimis or avoided entirely by appropriate curative instruction. Finally, defendant's claim of ineffective assistance of counsel is without merit.

Spain, J.P., Rose, Malone Jr. and Garry, JJ., concur. Ordered that the judgment is affirmed.