■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LAMARR REID, Appellant. [919 NYS2d 560]—

McCarthy, J.

In June 2001, defendant and Shahkene Joseph, also known as "Shottie," intended to rob an apartment where marihuana was regularly sold. When the victim opened the door with a BB gun in hand to ward off a stray dog, he apparently saw defendant and Joseph, causing the victim to push the door closed. Defend-

ant and Joseph then fired weapons through the door, with a shotgun blast hitting the victim's shoulder and a rifle bullet fatally striking him in the neck. After an investigation that ran cold for several years, police obtained a statement from Joseph explaining that he and defendant attempted the robbery and, in the process, killed the victim. Joseph was tried separately and convicted of murder; this Court affirmed his conviction (*People v Joseph*, 68 AD3d 1534 [2009], *lv denied* 14 NY3d 889 [2010], *cert denied* 562 US —, 131 S Ct 797 [2010]). A jury found defendant guilty of intentional murder, resulting in a sentence of 25 years to life. Defendant appeals.

Initially, the introduction to the grand jury of some improper evidence did not require dismissal of the indictment. The remaining evidence was sufficient to support the charges and the error was not likely to impair the integrity of the proceeding (*see People v Huston*, 88 NY2d 400, 409 [1996]).

The conviction was supported by legally sufficient evidence and not against the weight of the evidence. A defendant's admissions alone are not sufficient to convict, but the corroborating evidence need only tend to prove that the charged crime was committed by someone (*see* CPL 60.50); "no additional proof need connect the defendant with the crime" (*People v Lipsky*, 57 NY2d 560, 571 [1982]). Here, a witness testified that he was in the apartment when the victim went to the door, the victim made an exclamation of surprise and tried to close the door, several shots were fired and the victim fell back from the door. It was undisputed that the victim was fatally shot, thereby proving that the crime was committed. This evidence, when paired with testimony from two of defendant's friends that he admitted—with verifiable details—the attempted robbery and killing, was sufficient to establish that he committed murder. His intent may be inferred from his actions and the surrounding circumstances (*see People v Molina*, 79 AD3d 1371, 1376 [2010]; *People v Malcolm*, 74 AD3d 1483, 1484 [2010], *lv denied* 15 NY3d 954 [2010]). While the jury could have found that defendant merely acted recklessly or as a result of surprise when the victim opened the door with a weapon, the jury also could have found that when the victim impeded defendant's ability to enter the apartment to commit a robbery, defendant formed a conscious objective to kill him (*see People v Joseph*, 68 AD3d at 1536). We accept the jury's credibility determinations, which favored the prosecution witnesses and the belief that defendant admitted his participation in the crime (*see People v Malcolm*, 74 AD3d at 1485). Considering the circumstances, including defendant's actions in shooting through the closed door at the retreating

victim and later bragging about the killing, the weight of the evidence supported the jury's verdict.

County Court properly admitted the letters written by defendant. The People were not required to provide pretrial notice because the statements were made to his girlfriend and brother, not to a public servant (see CPL 710.30). While defendant now contends that he was entitled to a *Mapp* hearing to determine if some of the letters were illegally seized from him, he did not preserve this argument by clearly articulating to the trial court that he was requesting this relief. The court did not coerce defendant into stipulating that he wrote the letters. Defendant and his counsel made a strategic choice to acknowledge his authorship, given that a long-time friend had identified the handwriting as defendant's and the People could have called a correction official to testify that defendant was in the particular prisons from which the letters were mailed. He withdrew his request to redact the addresses, which was reasonable because the jury was aware that he was in prison. The court did not abuse its discretion in denying defendant's request to redact a picture of a tombstone and the phrase "catching bodies" from one letter. Defendant's use of that phrase in a letter contradicted his grand jury testimony that he was unfamiliar with the phrase and supported a witness's testimony that defendant used the phrase—which means to kill someone—in reference to the instant crime. The tombstone, while potentially prejudicial, was also somewhat relevant to the context of the letter in this murder case. Accordingly, the court did not err in admitting the letters.

Defendant is entitled to a new trial because his constitutional right to confront witnesses was violated. After defense counsel questioned an investigator about whether he had received information implicating an individual named Charles McFarland in this murder, the prosecutor asked whether the investigator "also received eye witness testimony about who exactly was at the murder" and whether "that eye witness testimony was that Charles McFarland certainly wasn't there." Defendant objected because no eyewitness testified to seeing the shooters. The individual who was inside the apartment testified as an eyewitness, but he did not see who was outside the apartment. The obvious implication, as counsel correctly argued, was that Joseph was the eyewitness (see *People v Nesbitt*, 77 AD3d 854, 856 [2010], *lv denied* 15 NY3d 954 [2010]; *People v Fairweather*, 69 AD3d 876, 877 [2010]). Such an implication was improper, however, because Joseph was unavailable to testify (see *Bruton v United States*, 391 US 123, 127-128 [1968]). Because Joseph was unavailable

and his pretrial statement to the police regarding who was present at the murder scene was testimonial, admission of that statement violated defendant's right to confront his accusers (*see Crawford v Washington*, 541 US 36, 53-54 [2004]; *People v Rawlins*, 10 NY3d 136, 147-148 [2008]).

The People contend that defendant opened the door to these questions by asking the investigator whether he had interviewed anyone who indicated that McFarland was involved. To give the jury a more complete picture, the prosecutor could have properly inquired as to whether an individual had told the investigator that McFarland was not involved. The problem is that the People asked about whether an "eyewitness" gave such information, thereby raising the implication that Joseph gave a statement excluding McFarland and, presumably, identifying defendant as an involved party. The additional evidence elicited by the People should have been limited to what was necessary to address the information brought out by defendant's questioning (*see People v Melendez*, 55 NY2d 445, 452-453 [1982]). The questions here exceeded the permissible boundaries.

"Confrontation Clause violations are subject to a constitutional harmless error analysis," requiring reversal "unless the error's impact was 'harmless beyond a reasonable doubt' " (*People v Hardy*, 4 NY3d 192, 198 [2005], quoting *People v Eastman*, 85 NY2d 265, 276 [1995]). Here, there is a reasonable possibility that the error might have played a part in defendant's conviction. The only proof linking defendant to this murder was the testimony of his friends—themselves criminals, testifying in exchange for some benefit—relating admissions that defendant made to them. The possibility that the jury was influenced by testimony regarding an eyewitness was demonstrated by its request for a read-back of the investigator's "testimony regarding eye witness or witnesses regarding any eye witness statement." Because the evidence was less than overwhelming and there is a reasonable possibility that the improper mention of an eyewitness statement in violation of defendant's right of confrontation may have contributed to the jury's verdict, the error was not harmless (*see People v Hardy*, 4 NY3d at 198-199; *People v Nesbitt*, 77 AD3d at 856).

Given our reversal, we need not address defendant's remaining arguments.

Mercure, J.P., Rose, Malone Jr. and Stein, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Albany County for a new trial.